# Richmond

MALCOLM MARVIN JEFFERSON v. COMMONWEALTH OF VIRGINIA.

April 22, 1974.

Record No. 730370.

Present, All the Justices.

*V. Cassel Adamson, Jr.,* for plaintiff in error.

*Robert E. Shepherd, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

HARMAN, J., delivered the opinion of the court.

Malcolm Marvin Jefferson was convicted in the trial court of killing a prison guard. At the time the offense was committed defendant was an inmate of a Virginia penal institution. He appeals the judgment of the trial court imposing the death penalty, fixed by the jury's verdict and made mandatory by statute. Code § 53-291.

Code § 53-291 provides, in pertinent part:

"It shall be unlawful for an inmate in a penal institution as defined in § 53-9 or in the custody of an employee thereof to do any of the following:

"(1) To kill, wound or inflict bodily injury upon (a) such employee or (b) any other person lawfully admitted to such penal institution, except another inmate, or (c) who is supervising or working with inmates; or

"(2) To escape from such penal institution or from any person in charge of such inmate; or

\* \* \*

"An inmate guilty of such killing as is mentioned in this section, or any act therein mentioned from which death ensues to such employee or person shall be guilty of first degree murder and be punished by death . . . ."

■ The defendant argues that the death penalty is cruel and unusual punishment, is unconstitutional *per se* and prohibited by the Eighth Amendment to the United States Constitution, a position in which he finds support from only two Justices of the majority in *Furman* v. *Georgia*, 408 U.S. 238 (1972). We have considered and rejected the argument advanced by the defendant on many past occasions, most recently in *Bloodgood* v. *Commonwealth*, 212 Va. 253, 183 S.E.2d 737 (1971), and *Fogg* v. *Commonwealth*, 208 Va. 541, 159 S.E.2d 616 (1968). Nothing has transpired since *Bloodgood* and *Fogg*, including the decision in *Furman*, to impair the validity of our holding that the death penalty is not unconstitutional *per se*. We affirm that holding here.

The defendant acknowledges that *Furman* deals with discretionary imposition of the death penalty and is limited to a statutory scheme which allows an arbitrary selective process to determine whether a defendant found guilty of a capital crime will receive a death sentence or some lesser penalty.

While conceding that death is the only penalty which may be imposed upon conviction of killing a prison guard under Code § 53-291, *Brown* v. *Commonwealth*, 132 Va. 606, 111 S.E. 112 (1922), the defendant argues that "the statute's operation inevitably requires the exercise of a broad range of uncontrolled selective discretion" by Commonwealth's attorneys and trial judges and that the Governor of Virginia could extend executive clemency. He contends this discretionary authority invalidates Code § 53-291 under *Furman*.

The substance of this argument is that a statute imposing the death penalty is constitutionally infirm under *Furman* where any discretion may be exercised by any authority at any time, either before, during or after trial.

We do not so construe *Furman*. The constitutional infirmity there was found in the discretion exercised in fixing punishment, be it by a jury or a judge. *Furman's* application is thus limited to statutes which permit such discretion to be exercised.

The defendant would also have us apply *Furman* on the ground that the jury could have found the defendant guilty of a lesser included offense and could have fixed a penalty other than death. This claim must fail for Code § 53-291 provides but one grade of offense and one penalty for the slaying of a prison guard, no lesser included offenses being embraced within that facet of the statute.

■ The defendant raises a due process argument claiming that Code § 53-291 is unconstitutional because of the classification of per-

sons to whom it applies. We find no merit in the claim. *See Hart* v. *Virginia*, 298 U.S. 34 (1936), and the cases cited therein.

In discussing the assignment of error relating to the sufficiency of the evidence, we view the evidence in the light most favorable to the Commonwealth.

Jefferson and another convict, James Edward Washington, guarded by six prison guards, were transported from the prison at State Farm to the Powhatan County Courthouse in Powhatan, Virginia, on the morning of November 22, 1971. Prior to the trip each convict was searched and then restrained and secured with handcuffs attached to a waist chain. After the party arrived at the courthouse at approximately 9:25 a.m., the defendant and Washington were escorted into the building and seated just inside the bar near the front of the courtroom.

Raul Monte and Brown Snyder remained on guard with the convicts while the other guards were stationed outside the building. Snyder stayed with the prisoners near the front of the courtroom. Monte seated himself near the door in the rear.

Approximately five minutes later Washington advised Snyder that he needed to visit the restroom. Snyder, after advising Monte of Washington's request, accompanied Washington toward the toilet which was located through a doorway at the front of the courtroom. Washington suddenly turned and attempted to grab the gun which Snyder was wearing in a holster at his side. A struggle ensued between Washington and Snyder. At this point Snyder was hit from the rear by Jefferson, who had been seated nearby. In the ensuing struggle between Snyder and the two convicts, the participants fell to the floor. Two or three shots were fired from Snyder's gun, which had been seized by one of the convicts.

Monte, alerted by the disturbance, ran toward the front of the Courtroom to assist Snyder. In so doing, Monte tripped and fell to his knees about the time the first shots were fired. After Monte regained his feet and started toward Snyder and the convicts, additional shots were fired.

John D. Netherland, one of the outside guards, heard the shots and ran to the courtroom. As Netherland entered the courtroom he did not observe Monte or Snyder who were concealed from his view by the bar enclosure. Monte, who had been fatally wounded, was lying on his back on the floor. Snyder was still on the floor attempting to recover a gun which he observed there.

Netherland observed a man dressed in prison clothing going through a door to the judge's chambers at the front of the courtroom. Netherland observed the door close and, a few moments later when the door reopened, Netherland fired a shot which struck this door approximately three or four feet above the floor.

He then observed another man dressed in prison garb "coming out from behind the judge's bench" in a "crouched" position. He observed this man "[d]ive through the jury room door into the jury room." He fired a shot in that direction which struck a chair, a table top, and lodged in a door facing. Netherland then fired a third shot which struck the jury room door "[a] little to the right and above the door knob."

Both Jefferson and Washington subsequently surrendered. Jefferson, who came out of the judge's chambers, had his right hand free. The handcuffs were "dangling" from his left wrist. Washington's right hand was also free of the handcuffs which were still affixed to his left wrist when he surrendered from the jury room. The waist chain on each of the convicts had been disengaged from the handcuffs.

An autopsy on Monte's body disclosed that both of the wounds which he suffered in his back were "close shots," the clothing around each wound being impregnated with residue from a gunshot fired in close proximity to the victim.

The defendant now challenges the sufficiency of this evidence to support two instructions given without objection by the trial court.[1]

■ We find no error in granting these instructions. While the evidence did not, as the defendant argues, definitely establish "who pulled the trigger," this is not important. The evidence does establish, beyond a reasonable doubt, that the victim was killed in an escape attempt in which both Jefferson and Washington participated. The

---

[1] The instructions now challenged are as follows:

"Instruction No. 10.

"The Court instructs the jury that if you believe from the evidence beyond a reasonable doubt that the accused, Malcolm Marvin Jefferson, while a convict in the State Penitentiary did unlawfully and feloniously kill Raul Mederies Monte, then a guard therein, all as charged in the indictment, then you shall find the accused guilty and fix his punishment at death.

"Instruction No. 11.

"The Court instructs the jury that if you believe beyond a reasonable doubt that the accused, Malcolm Marvin Jefferson, by himself or with another planned to escape and in pursuance of such plan and during such plan or attempt [sic] escape Captain Raul Mederies Monte was killed by the accused James Edward Washington or Malcolm Marvin Jefferson, then you shall find him guilty of murder in the 1st degree."

evidence also conclusively establishes that the fatal shots were fired by one of the two convicts.

Whether Jefferson actually fired the shots is immaterial since he was either a principal in the first degree or a principal in the second degree. Under Code § 18.1-11 principals in the second degree are punished as though principals in the first degree.

We, likewise, find no merit in the defendant's argument that the statute applies only to a killing within the penal institution to which Jefferson was confined. *Ruffin* v. *Commonwealth*, 62 Va. (21 Gratt.) 790, 793-94 (1871).

The defendant assigns error because the defendant's trial was held in the courtroom which was the scene of the killing. He underpins this argument by citing a number of cases including *Noell* v. *Commonwealth*, 135 Va. 600, 115 S.E. 679 (1923); *Yeary* v. *Holbrook*, 171 Va. 266, 198 S.E. 441 (1938); *Crockett* v. *Commonwealth*, 187 Va. 687, 47 S.E.2d 377 (1948); and *Kearns* v. *Hall*, 197 Va. 736, 91 S.E.2d 648 (1956). These cases all deal with jury misconduct or an unauthorized view and are inapposite.

Here the case was tried in the courtroom where the court regularly sits. The jury was at all times under the control and direction of the court. The record shows the defendant was personally present in every stage in the trial proceedings. The damage inflicted to the courtroom had been repaired prior to trial. Had the killing occurred elsewhere, the court, in its discretion, could have permitted the jury to view the scene under Code § 8-216. We can perceive no prejudice to the defendant and find no abuse of discretion by the trial judge in overruling the defendant's objection to the use of the courtroom regularly used by the court.

The defendant alleges that the trial court erred in not granting his motion, made immediately before trial, for a continuance for an additional mental examination.

Prior to trial, the court, *sua sponte*, ordered such an examination to be conducted by a renowned psychiatrist who later reported his findings to the court. In his report the psychiatrist concluded that Jefferson was "not psychotic," was able to "distinguish right from wrong," was able "to plead and stand trial and participate in his own defense."

The defendant's counsel offered no evidence in support of his motion and did not express a reasonable doubt of the defendant's sanity. When asked by the court whether he was "claiming the defendant [was] insane or mentally incompetent," defense counsel answered, "I just don't know, but perhaps somebody might tell me."

While Code § 19.1-227 provides that no person shall be tried for a criminal offense while he is insane or feebleminded, the accused is presumed to be sane at trial unless his mental condition is called into question by proof to the contrary. *Thomas* v. *Cunningham*, 313 F.2d 934, 938 (4th Cir. 1963).

The defendant, at the court's direction, had undergone a mental examination less than six months before trial and had been certified as sane by the psychiatrist who examined him. Had there been evidence that defendant was mentally impaired, or had reasonable doubt of his mental condition been raised by his counsel or by the defendant's conduct and demeanor, the court, in its discretion, could have ordered a further examination.

There is nothing in the record here requiring such action to be taken by the trial court. Clearly there was no abuse of discretion by the trial court when it denied the motion for a continuance on the morning of the trial.

The final argument to which we must address ourselves is the defendant's claim that the trial court erred in failing to grant his motions for a change of venue.

The first motion was heard on May 26, 1972. The only witness presented at this hearing was the attorney who represented the co-defendant, Washington. This attorney related that the incident "upset" almost everyone in the county because the victim was popular and well known and that "[i]t was the topic of conversation for several weeks thereafter." This attorney expressed an opinion that the defendant could not obtain a fair trial in Powhatan County. On cross-examination, the witness admitted that his opinion was based on "surmise and speculation" and resulted largely from his conversations shortly after the incident with 15 to 60 of the 8,000 residents of the county.

While counsel, in his argument on the motion, alluded to newspaper publicity, no evidence was produced or exhibits filed in support of this claim.

The trial judge, while denying the motion for a change of venue at that time, suggested that he would reconsider the motion after the trial of Washington which was scheduled before the defendant's trial.

The motion for a change of venue was renewed prior to defendant's trial on November 30 and was again denied. No further evidence was offered at that time.

An extensive *voir dire* examination of the prospective jurors was conducted by the court and by counsel. To qualify a panel of 20 it

was only necessary to examine 28 of the persons summoned. Of those excused, two were dismissed because they lived within two miles of the scene of the crime, two were released because of their friendship and association with the victim, one was discharged because of his association with prosecution witnesses, one was excused because he was associated with the victim's son at school, one was released because of his conversations with a prison guard about the incident and the other was dismissed because he had been summoned as a juror on November 22, 1971, and arrived at the courthouse shortly after the shooting.

Five additional prospective jurors were examined to select a panel of three from which an alternate juror would be selected. Two of these were excused, one because he indicated he would not, under any circumstances, vote to impose the death penalty and the other because of his presence at the courthouse shortly after the killing.

To grant or deny the motion for a change of venue is within the sound discretion of the trial judge. In exercising this discretion the trial court should look to conditions which obtain at the time of the trial and not those which existed at the time of the alleged offense. *Greenfield* v. *Commonwealth*, 214 Va. 710, 204 S.E.2d 414 (this day decided); *Evans* v. *Commonwealth*, 161 Va. 992, 170 S.E. 756 (1933).

The law presumes that a defendant can get a fair and impartial trial in the county in which the offense was committed. The burden is upon the defendant requesting a change of venue to overcome the presumption by a clear showing that there is such widespread feeling of prejudice on the part of the citizens of the county as will be reasonably certain to prevent a fair and impartial trial. *Greenfield* v. *Commonwealth, supra*; *Farrow* v. *Commonwealth*, 197 Va. 353, 355, 89 S.E.2d 312, 313 (1955).

And where, as here, an impartial jury is subsequently secured after refusal of a change of venue, there arises a presumption that the motion for such a change was not well-founded. *Taylor* v. *Commonwealth*, 122 Va. 886, 94 S.E. 795 (1918).

Here there was no showing of inflammatory coverage by the news media, no evidence of mass prejudice or hostility toward the defendant and no unusual difficulty in securing an impartial jury. In these circumstances we find no error in the rulings of the trial court denying the change of venue.

For these reasons the judgment of the trial court is

*Affirmed.*