## Richmond

OLD DOMINION IRON AND STEEL CORPORATION v.
VIRGINIA ELECTRIC AND POWER COMPANY, ET AL.

March 10, 1975.

Record No. 740495.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Poff, JJ.

*Julious P. Smith, Jr. (Robert N. Pollard, Jr.; Robert L. Musick, Jr.; Williams, Mullen & Christian,* on brief), for plaintiff in error.

*Joseph C. Kearfott; Albert J. FitzPatrick, Assistant City Attorney for the City of Richmond (George D. Gibson, E. Milton Farley, III; Hunton, Williams, Gay & Gibson,* on briefs), for defendants in error.

Poff, J., delivered the opinion of the court.

The fundamental question before us is whether Old Dominion Iron & Steel Corporation (Old Dominion) stated a cause of action in its motion for judgment against Virginia Electric and Power Company (Vepco) and City of Richmond, Virginia (the City).

A preliminary question is what properly constitutes the record before us. The final order sustaining the City's demurrer and Vepco's motion for summary judgment, in which the trial court incorporated its letter opinion dated December 13, 1973, was entered on January 25, 1974. On February 15, 1974, Old Dominion filed its notice of appeal and assignments of error, stating expressly that "it does not intend to hereafter file any transcript, statement of facts, testimony or other incidents of the case." The clerk of the trial court transmitted the record to this Court on March 11, 1974. Old Dominion filed its petition for a writ of error on May 24, 1974. The City and Vepco filed their briefs in opposition on June 5, 1974, and June 7, 1974, respectively. We awarded a writ on July 26, 1974. On August 2, 1974, Old Dominion designated for printing in the Appendix the following parts of the record transmitted by the Clerk: the motion for judgment; the demurrer; the motion for summary judgment; the letter opinion; the final order; and the notice of appeal and assignments of error. Upon Vepco's motion, the trial court entered an order on August 22, 1974, enlarging the record to include all papers, pleadings, memoranda, and exhibits in support of motions, filed as part of a suit in equity antecedent to the motion for judgment; the final decree in that suit dismissing

the cause "with prejudice"; the transcript of a hearing incorporated in that decree; and the transcript of a hearing on Vepco's motion for summary judgment and the City's demurrer to Old Dominion's motion for judgment. Pursuant to this order, the clerk of the trial court transmitted these additional papers to this Court on August 22, 1974.

Old Dominion requests that the order enlarging the record be reversed and that this appeal be determined upon the record as originally transmitted.

The transcript of the hearing on the motion for summary judgment and demurrer to the motion for judgment was not incorporated in the record as provided in Rule 5:9. Since the original suit in equity was dismissed with prejudice and never appealed, and since none of its pleadings, motions, memoranda, exhibits, transcripts, or orders was introduced as exhibits in the proceedings on the motion for judgment, none is part of the record on appeal as defined by Rule 5:8. While the trial court is empowered by Rule 5:10 to decide disagreements among counsel or between counsel and the clerk, the trial court has no power by Rule or statute to add to the contents of the record on appeal anything not designated in Rule 5:8. When the record has been transmitted in compliance with Rule 5:15 by the clerk of the trial court to the clerk of this Court and a writ of error or appeal has been granted, the record on appeal cannot be enlarged except upon our award of a writ of certiorari as provided in Code § 8-473 (Repl. Vol. 1957). The trial court erred in entering the August 22, 1974, order.

The order is reversed, and we will proceed to the consideration of the fundamental issue on the record as originally transmitted. Confining ourselves to that record, we will not notice arguments of the parties based upon facts not stated expressly or by necessary implication.

We look to the motion for judgment for facts and reasonable inferences of facts, for they are taken as confessed when well pleaded. *Chippenham Manor* v. *Dervishian*, 214 Va. 448, 201 S.E.2d 794 (1974); *Ames* v. *American Nat. Bank*, 163 Va. 1, 176 S.E. 204 (1934).

By deed dated January 29, 1926, Old Dominion's corporate grandfather conveyed to Old Dominion's corporate father 12 acres of land on Belle Isle, an island in the James River in Richmond. By the same deed, the grantor conveyed to Vepco all

of its right, title, and interest in the steel highway bridge connecting the island with the north bank of the river. However, the deed provided that Old Dominion and its successors in title could use the bridge in connection with its manufacturing operation conducted on the 12-acre tract, and that Old Dominion and Vepco and their respective successors in title "shall jointly . . . maintain the same and shall contribute equally . . . towards the cost of maintenance upkeep repair and replacement of said bridge and towards the settlement and discharge of any claims or actions at law, for damage or personal injury to property or persons growing out of the use, maintenance upkeep and repair of said bridge."

Vepco and Old Dominion, the two grantees in the deed, executed a separate agreement of even date and later recorded both documents on the same date. The agreement acknowledged as binding the provisions of the deed quoted above.

On May 13, 1933, Old Dominion and Vepco entered into another agreement under which Vepco released Old Dominion from its liability respecting the bridge and assumed sole responsibility for the maintenance, repair, and replacement thereof so long as no other adequate roadway connection with the north shore of the river was available.

The 1926 agreement, as amended in 1933, was made for Old Dominion's use, enjoyment, and benefit.

By order entered in condemnation proceedings on September 12, 1968, the trial court vested title in the City to a portion of the 12-acre tract, but, with the City's consent, Old Dominion continued to occupy the condemned land, conduct its business on the 12-acre tract, and use the bridge in connection with its business operation.

About January 15, 1970, the remaining portion of the 12-acre tract, previously acquired by the City, was leased by the City to Old Dominion, and Old Dominion continued to occupy and use the entire tract.

Under an agreement dated March 27, 1972, Vepco agreed to sell and the City agreed to buy certain Vepco holdings on Belle Isle, including the steel bridge. The agreement further provided that Vepco would continue to maintain the bridge as long as Old Dominion continued to occupy the 12-acre tract, with the understanding that the City would consummate acquisition and occupancy of that property as soon as possible. This agreement

was in confirmation of Vepco's duties with respect to the bridge and was made for Old Dominion's use, enjoyment, and benefit.

On June 23, 1972, the bridge was destroyed by the flood waters of tropical storm "Agnes" and has not been replaced.

Having recited these allegations of fact in its motion for judgment, Old Dominion alleged that "[a]s a result of the failure of either Vepco or the City to properly maintain, keep up and repair the bridge by reason of which failure the bridge was destroyed as aforesaid and as a result of the failure of either Vepco or the City to replace the bridge, all in violation of the duties and obligations of Vepco and the City pursuant to agreements made as aforesaid for Plaintiff's use, enjoyment and benefit, Plaintiff has sustained and will continue to sustain" certain specifically enumerated damages, including the costs of providing alternate methods of access and transportation to and from its plant.

Old Dominion argues that it has alleged standing in three capacities to sue for damages for breach of the covenant to maintain and replace the bridge, *viz.*, in its capacity as lessee of a portion of the land benefited by the covenants in the deed, in its capacity as condemnee and permissive occupant of another portion of that land, and in its capacity as original promisee in the contract arising from the 1926 agreement, as amended in 1933. Old Dominion argues further that, in its capacity as third party beneficiary of the March 27, 1972, contract between Vepco and the City, it has standing to sue for damages for breach of the contract commitment to maintain the bridge. Finally, Old Dominion contends that, with respect to its standing in each of these capacities, it has alleged a breach of obligation and causally related damages and, thus, has properly pleaded a cause of action against Vepco and the City.

## I. *Old Dominion As Lessee*

The deed contained two covenants, one covenant granting Old Dominion the right to use the bridge (a use in the nature of and easement) and the other covenant requiring Old Dominion and Vepco to maintain and replace the bridge. The parties do not disagree that these covenants run with the land. The bridge is the burdened estate. The 12-acre tract is the benefited estate.

Old Dominion alleged that it leased a parcel of land from the

City about January 15, 1970. Reading the motion for judgment as a whole, it appears that this parcel was a portion of the 12-acre tract benefited by the covenants. The terms and tenure of the leasehold are not reflected in the record before us, and we cannot consider the argument advanced by Vepco and the City that Old Dominion's leasehold interest "was not sufficiently substantial" to give it standing to sue for damages flowing from a breach of the covenants. Nor do we mean to imply that we would accept the argument if the record reflected the terms and tenure of the leasehold.

We consider only whether a leasehold interest acquired from an original covenantee or its successor in title is sufficient to give a lessee standing to enforce the covenants.[1] Vepco argues that, under the express language of the covenants, only "successors in title", i.e., subsequent owners of fee simple title, have such standing. Such an argument overlooks the distinction the law makes between the burden of a covenant running with the land and the benefit of such a covenant.

That distinction and the rules attendant upon it are stated in *Restatement of Property* § 547 at 3266-69 (1944):

"§ 547. PRIVITY BETWEEN BENEFICIARY AND SUCCESSOR.

**"The benefit of a promise respecting the use of land of the beneficiary of the promise can run with the land only to one who succeeds to *some interest* of the beneficiary in the land respecting the use of which the promise was made.**

*"Comment:*

*a. Rationale.* . . . The running of the benefit, like the running of the burden, was once based upon a concept of identification of the successor with his predecessor. This concept required for its application that the successor succeed to the estate held by the original promisee. But other concepts have joined to modify the historical concept as applied to the running of benefits. The succession to benefits is never as objectionable, at least from the point of view of the successor,

---

[1] In *Jones* v. *Richmond,* 88 Va. 231, 13 S.E. 414 (1891), and *Meagher* v. *Appalachian Power Co.,* 195 Va. 138, 77 S.E.2d 461 (1953), cited by Vepco, the party seeking to enforce the covenant had no proprietary interest in the benefited estate. Those cases are inapposite here, since Old Dominion has alleged a leasehold interest.

as the succession to burdens. It is not unnatural that greater liberality has been displayed with respect to the former kind of succession than the latter. The result has been so to modify the concept of identification with respect to the running of the benefit of a promise respecting the use of land as to require only that *an interest* of the predecessor pass to the successor.
. . .

*c. Succession to interest.* The concept of identification, upon which the running of both the burden and the benefit of promises respecting the use of land is based, presupposes a succession to an interest in the land with which the promises run. Historically, such a succession meant a succession to the interest of the predecessor in that land. This historical rule is still applicable in the case of the running of the burden (see § 535). It is no longer true with respect to the running of the benefit. The benefit will run with *any part of the interest* of the beneficiary of the promise if the part succeeded to is of such a character that performance of the promise will be of benefit to the owner of it.
*"Illustration:*

1. A and B are the owners of neighboring lands. A has a dwelling house located on his land. B covenants with A and his assigns that he, B, will not use his land as the site of a manufacturing establishment. A leases his house to C for ten years. B begins to operate a glue factory upon his land. C is sufficiently the successor to the benefit of the promise to enable him to sue upon it." [Emphasis in text supplied].

The rule is further explicated in 2 *American Law of Property* § 9.20 (392) (1952):

". . . But in the case of the benefit as distinguished from the burden, the courts permit the life tenant or lessee of the covenantee to enforce the benefit. In these cases the courts proceed on the theory that the benefit of a covenant is primarily attached to the possession of the covenantee's estate, and that when he has transferred this possession by creating a lesser possessory estate, the benefit should be treated as temporarily passing with the possessory interest to the life tenant or lessee."

To accept Vepco's argument, we must assume that the original parties to the covenants intended that the benefit run only to the

covenantee and its "successors in title". Except for the use of that phrase, we find nothing in the record bearing upon the parties' intent which would justify such an assumption. Rather, we find much that supports the construction that the parties intended that the benefit should descend to an owner of a lesser possessory interest in accordance with the established rules governing covenants running with the land. When the covenant was first attached to the 12-acre tract, the covenantor and covenantee knew that the bridge was the only vehicular access to the island from the shore. While the benefit of the covenant, as an attachment to the land, had some value, its only real value was in its attachment to the *use* of the land. If we are to make any assumption as to what the original parties intended, we must assume that they intended the benefit of the covenants to run to those they could reasonably anticipate would necessarily be the users of the bridge, *viz.*, the original covenantee, its successors in fee simple title, and the possessors of a lesser proprietary interest lawfully acquired from the original covenantee or one of its successors in title. As lessee of the City, Old Dominion possessed such an interest; necessarily, the lease agreement must have contemplated use of the demised premises as part of Old Dominion's manufacturing operation and use of the bridge in connection therewith. Under the facts before us, we do not construe the phrase "successors in title" as a limitation on the class of the covenantee's successors entitled to enforce the covenant, but as an indication of the parties' intent that the covenants run with the land.

We hold that Old Dominion, as lessee of a portion of the benefited estate,[2] had standing to sue for damages resulting from a breach of the covenant to maintain and replace the bridge and properly pleaded a cause of action against the legal owner of the burdened estate. During the time the alleged damages were sustained the legal owner was Vepco. As vendee in the March 27, 1972, contract, the City was equitable owner. Unlike an owner of a lesser proprietary interest in the benefited estate who inherits the *benefit* of the covenant, an owner of a lesser proprietary interest in the burdened estate does not inherit the *burden*. In

---

[2] A covenant is not destroyed by division of the benefited estate, and its benefit runs to an assignee of a parcel of the benefited estate, provided the enjoyment of the benefit does not place an additional charge upon the burdened estate. *Restatement of Property, supra* at § 551 (3276-77). *See also Linkenhoker* v. *Graybill,* 80 Va. 835 (1885) (applying the same rule with respect to easements).

order for the successor to the covenantor to be liable upon the burden of the covenant, he must succeed to the estate of the covenantor.[3] 2 *American Law of Property, supra* at § 9.15 (384); *Restatement of Property, supra* at § 535 (3210-11). Since City, as the equitable owner, had neither legal title to nor the right to occupy the burdened estate, 8A G. Thompson, *Real Property,* § 4449 (285-86) (1963), it had not succeeded to the estate of its predecessor, Vepco.

Accordingly, we hold that Old Dominion, in its capacity as lessee, has failed to state a cause of action against the City.[4]

## II. *Old Dominion as Condemnee and Permissive Occupant*

█ Old Dominion alleged that, at the time its damages were sustained, it was a permissive occupant of the condemned parcel of the benefited estate. On appeal, it argues that, as condemnee, it had a potential reversionary interest sufficient to give it standing to sue for damages resulting from a breach of the covenant to maintain and replace the bridge.

But Old Dominion made no allegation in its motion for judgment that the condemnation proceeding was still pending and that it owned such an interest at the time its damages were sustained. While we cannot look to the enlarged record, we take judicial notice of our opinion in *Richmond* v. *Old Dominion Iron and Steel Corporation,* 212 Va. 611, 186 S.E.2d 30 (1972). There, we held, *inter alia,* that the City had proved the necessity of the taking of the parcel of land involved here. Upon the entry of our order in that case, any potential reversionary interest owned by Old Dominion was extinguished. Our order was entered January 17, 1972. The bridge was destroyed June 23, 1972.

We hold that Old Dominion failed to allege standing as a condemnee to enforce the covenant, that it had no such standing in fact, and that as condemnee and permissive occupant, it failed to state a cause of action against Vepco and the City.

---

[3] The covenant to maintain and replace the bridge is an affirmative covenant. We do not decide what rule would apply to a negative covenant running with the land.

[4] There is respectable authority for the rule urged by Vepco that when the benefited estate and the burdened estate become merged in the same owner, a covenant running with the land is extinguished. *See, e.g.,* 21 C.J.S., *Covenants* § 78 (936) (1940). But there was no such merger here. While the City owned fee simple title to the benefited estate in its entirety, the City as we have said, owned only an equitable title to the burdened estate.

### III. *Old Dominion as Original Promisee of a Contract*

■ Old Dominion says that, apart from its standing as lessee to enforce the covenants in the deed, it has standing as original promisee in the separate contract arising from the 1926 and 1933 agreements to sue for damages for breach of the promise Vepco made in that contract.

Vepco argues that the promise to maintain and replace the bridge raises a duty the benefit of which attaches to ownership of the benefited property; that the breach of that duty "injures a party by damaging his property interest"; and that "any cause of action arises from this property interest." Vepco concludes that Old Dominion had no "substantial estate in the benefited property" and therefore "does not have such a property interest on which to sue and recover damages."

Vepco's contractual liability, as distinguished from its liability on the covenants, is founded upon privity of contract with Old Dominion and does not depend upon Old Dominion's ownership of a substantial interest in the benefited estate.[5] The nature and extent of Vepco's contractual liability turns upon the intention of the parties, as evidenced by the two contract documents and the circumstances surrounding their execution. The facts alleged in the motion for judgment do not manifest an intent that Vepco's liability terminate when Old Dominion ceased to own a "substantial estate" in the benefited property. The contractual commitment to maintain and replace, like the covenants, was attached to the *use* of the benefited property (*See* Part I, *supra*). This circumstance supports the conclusion that the parties intended Vepco's contractual obligations to continue as long as Old Dominion had the right to use the bridge in connection with its manufacturing operation on the island.

Old Dominion alleged that it had such a right, that Vepco

---

[5] "... [A] ... covenant [running with the land] creates two different bases of liability in the covenantor. Firstly, he is in privity of contract with the covenantee, and this relationship creates in the covenantor a contract duty which is unassignable. Secondly, he is in privity of estate with the covenantee, and this relationship is the basis upon which the courts treat a contractual burden as attaching to the covenantor's land and running to a subsequent assignee. Thus, when the covenantor assigns his entire estate in the land, he ceases to be liable as to the future upon this contractual burden because he is no longer in privity of estate with the covenantee; but his liability upon the nonassignable contract duty under privity of contract remains in him." 2 *American Law of Property, supra* at § 9.18 (388).

breached the promise to maintain and replace the bridge, and that it was damaged by the breach. As promisee of the 1926 and 1933 agreements, Old Dominion stated a cause *ex contractu* against Vepco. Since Old Dominion did not allege that the City was privy to the contract, it failed to state such a cause against the City.

### IV. *Old Dominion as Third-Party Beneficiary*

■ Old Dominion alleged that the March 27, 1972, contract under which Vepco agreed to sell the bridge to the City provided "that Vepco would continue to maintain the bridge so long as Plaintiff's occupancy of property on Belle Isle continued, with the understanding that the City would as soon as possible consummate acquisition and occupancy of the said property" and that this provision "was made for Plaintiff's use, enjoyment and benefit."

This allegation was fully sufficient to give Old Dominion standing under Code § 55-22 (Repl. Vol. 1974) to sue for damages for breach of the commitment to maintain the bridge. *See Kempsville Utilities* v. *Wills,* 213 Va. 679, 194 S.E.2d 740 (1973). Old Dominion alleged that the commitment was made by Vepco. The commitment was part of the consideration for the City's promise to buy the bridge. Old Dominion's rights under that commitment are co-extensive with those of the City. We hold that Old Dominion, as third-party beneficiary under the contract, properly stated a cause of action against Vepco; it stated none against the City.

■ Vepco argues that Old Dominion alleged only a commitment to *maintain* the bridge and that such a commitment does not include a duty to *replace* the bridge.

Ordinarily, a duty to replace is not to be inferred from a naked promise to "maintain". Absent factors denoting a broader obligation, such a promise imports only an undertaking to conserve the *status quo, i.e.,* to make such repairs as become necessary to sustain normal operability.

But this is not an ordinary case, and we must determine whether the record before us indicates that the parties intended the commitment to "maintain" to include the duty to replace. The use of the word "maintain" is only one of the facts alleged and, standing alone, that fact does not resolve the question. Old Dominion further alleged that Vepco's commitment "was in

confirmation of the duties and obligations" Vepco had undertaken in 1926. It is not likely that Vepco would have volunteered any commitment for Old Dominion's benefit had it not felt that it owed Old Dominion some continuing duty with respect to the bridge. The only duty it could have had in mind was its earlier commitment to maintain and replace. Of course, upon a trial on the merits, the burden of proving intent will rest upon Old Dominion. On this appeal, however, we are not concerned with proof of the facts alleged but with the sufficiency of the allegations.

We hold that the trial court was correct in sustaining the City's demurrer but erred in granting Vepco's motion for summary judgment. The judgment is affirmed in part and reversed in part, the motion for judgment as to Vepco is reinstated on the docket, and the case is remanded for further proceedings not inconsistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*