## Richmond

JAMES E. WASHINGTON v. COMMONWEALTH OF VIRGINIA.

September 5, 1975.

Record No. 741208.

Present, All the Justices.

*Murray J. Janus; Edward D. Barnes (Bremner, Byrne, Baber & Janus*, on brief), for plaintiff in error.

*Robert E. Shepherd, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General*, on brief), for defendant in error.

I'ANSON, C.J., delivered the opinion of the court.

Derendant, James Edward Washington, was indicted by a grand jury of Powhatan County for the felonious killing of Raul M. Monte in violation of Code § 53-291 and subsection 53-291(1).[1] After numer-

---

1. Code § 53-291, in pertinent part, provides:
 "It shall be unlawful for an inmate in a penal institution as defined in § 53-9 or in the custody of an employee thereof to do any of the following:
 (1) To kill, wound or inflict bodily injury upon (a) such employee or (b) any other person lawfully admitted to such penal institution, except another inmate, or (c) who is supervising or working with inmates; or
 (2) To escape from such penal institutions or from any person in charge of such inmate; or
 . . . .
 "An inmate guilty of such killing as is mentioned in this section, or any act therein mention from which death ensues to such employee or person shall be guilty of first degree murder and be punished by death. . . ."
 The statute was amended and recodified as § 18.2-31(c) of the new Criminal Code, effective October 1, 1975. *See* Acts 1975, cc. 14 and 15, at pp. 18, 19, 22, 101, 102, 103, 106, 185.

ous continuances on motions of the defendant and two mistrials, a change of venue was granted, also on defendant's motion. Defendant was then tried in the Circuit Court of the City of Virginia Beach by a jury which found him guilty as charged in the indictment and fixed his punishment at death. Judgment was entered on the jury's verdict on August 14, 1974, and defendant is here on a writ of error.

The defendant contends: (1) that the death penalty is unconstitutional per se; (2) that the death penalty provision of Code § 53-291 is unconstitutional because the opportunities for discretionary determinations of punishment violate the ruling and spirit of *Furman* v. *Georgia*, 408 U.S. 238 (1972); (3) that § 53-291 is vague and overbroad; (4) that the jury was improperly instructed about a plan to escape, since the Commonwealth elected in its bill of particulars to prosecute under § 53-291(1); (5) that the jury's verdict is void because the statute required the indictment to recite that at the time of the killing Washington was an inmate of a State penal institution and that Monte was employed as a prison guard; (6) that defendant was denied a speedy trial; (7) that the constitutional provision against double jeopardy was violated; (8) that the Commonwealth's Attorney impermissibly commented on the failure of defendant to testify; (9) that the trial court erred in granting and refusing certain instructions; (10) that defendant could not be convicted as a principal in the second degree under Code § 53-291; and (11) that the evidence was insufficient to support the conviction.

The facts presented in the present case are substantially identical to those in the companion case of *Jefferson* v. *Commonwealth*, 214 Va. 747, 204 S.E.2d 258 (1974).

The evidence, briefly stated, shows that on November 22, 1971, Washington and Malcolm M. Jefferson, both inmates at the State Farm in Powhatan, Virginia, a part of the Virginia State penal system, were transported to the Powhatan County courthouse by Captain Raul M. Monte and several other prison guards. Before being transported each was searched and then secured with handcuffs, which were in turn secured by a chain around the waist of each inmate.

Upon arriving at the courthouse the two inmates were taken inside the building and seated in the front part of the courtroom, inside the bar. Captain Monte and guard Snyder took positions near the back of the courtroom.

Washington requested that he be permitted to use the bathroom facilities. Captain Monte granted the request, and directed Snyder to

accompany Washington. While Washington and Snyder were proceeding toward the bathroom, Washington grabbed the guard and reached for his pistol, which was in a holster. A scuffle ensued and Jefferson, the other inmate, jumped on Snyder's back. During the struggle one of the inmates gained possession of Snyder's pistol and fired it several times. Captain Monte ran to Snyder's assistance, but before he reached the scene of the struggle he tripped and fell to the floor. When Monte got back on his feet, more shots were fired from Snyder's gun by one of the inmates.

John D. Netherland, one of the State Farm guards stationed outside the courthouse, heard the shots and rushed into the courtroom. Netherland saw Jefferson enter a door at the right-front side of the courtroom. The door closed. Moments later it opened and Netherland fired his gun. The bullet struck the door about four feet above the floor.

Netherland also fired two shots at Washington when he saw him emerge from behind the judge's bench and dive into the jury room on the left-front side of the courtroom. One of the bullets hit a chair and penetrated a door facing, and the other hit the jury room door.

When Washington and Jefferson finally surrendered, their handcuffs were loose. Washington's right hand was free but his left hand was still cuffed.

After the incident, Captain Monte was found mortally wounded, lying at the scene of the struggle. An autopsy disclosed that he had been shot twice in the back from close range.

At the outset of defendant's argument before us, he moved that we deny the Commonwealth's petition for a writ of certiorari directing the clerk of the Circuit Court of Powhatan County to send to this court certain omitted parts of the record. The parts of the record sought were the transcript of the hearing held on May 23, 1974, at which defendant's court-appointed attorneys asked leave to withdraw as counsel, and the trial judge's opinion letter to counsel dated July 22, 1974, which stated that all continuances in the case had been granted on defendant's motions.

Defendant argued that certiorari should not lie because the omitted transcript of the hearing had not been made a part of the record, as required by Rule 5:9, and because the judge's opinion letter had not been filed with the clerk.

We agree with the defendant that the transcript of a hearing is not a part of the record on appeal if it has not been made such under the

requirements of Rule 5:9. *Old Dominion Iron* v. *VEPCO*, 215 Va. 658, 659-60, 212 S.E.2d 715, 717-18 (1975). But an opinion letter of the trial judge is a part of the record on appeal without any requirement that it be filed with the clerk. Rule 5:8(e).

Code §§ 8-473 (1957 Repl. Vol.) and 19.1-284 (1960 Repl. Vol.) authorize this court in any case to award certiorari by which the clerk of the court below is directed to send to this court any and all parts of the record which have been omitted from the record transmitted to us. *See also Old Dominion Iron, supra,* 215 Va. at 660, 212 S.E.2d at 718.

It appeared in oral argument before us that additional parts of the record had been omitted when it was transmitted to us, and that those parts were necessary for the proper determination of some of the issues raised by defendant in his assignments of error. Hence, we denied defendant's motion and ordered the clerk of the Circuit Court of Powhatan County to send to this court any and all parts of the record, as defined by Rule 5:8, which had been omitted.

Defendant urges us to reconsider our decision in *Jefferson, supra,* where we held that the death penalty mandated by Code § 53-291 is not unconstitutional per se.

The Supreme Court of the United States has not held that the death penalty per se violates the constitutional guarantee against cruel and unusual punishment. Only two of the Justices of the Court held, in *Furman,* that such penalty is unconstitutional per se, and we are not persuaded that our holding in *Jefferson* was incorrect. Thus we adhere to our prior ruling.

Defendant also contends that our decision in *Jefferson* is contrary to the holding and spirit of *Furman,* where, he says, the court held that the discretionary imposition of the death penalty constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the Constitution of the United States. He asserts that, despite the mandatory death penalty provision of Code § 53-291, there exists in the imposition of this penalty an unconstitutional discretion in the prosecutor, the jury, the judge and the executive.[2]

Having rejected the same argument in *Jefferson, supra,* 214 Va. at 749, 204 S.E.2d at 260, we see no reason to depart from our prior

2. Similar argument as to arbitrariness in the imposition of the death sentence was recently made in *Fowler* v. *North Carolina,* now pending before the Supreme Court of the United States. 43 U.S.L.W. 3577-79 (April 29, 1975). The North Carolina statute is quite different from our statute.

holding. *See also Williams* v. *State*, 542 P.2d 554 (Okla. Ct. Crim. App. 1975).

 Code § 53-291 is challenged for vagueness and overbreadth on the grounds that there is no requirement of criminal intent and no standard to measure the culpability of the homicide for which the death penalty may be imposed.

The statute, or its predecessor, has been on our books since the Acts of Assembly 1843-44, ch. 72, § 1, at 55. It first appeared in the Code in 1849, ch. CCXIV, at 797-98. In *Jefferson, supra,* the appellant unsuccessfully challenged the constitutionality of the statute because of the classification of persons to whom it was applicable. It has been upheld against constitutional challenges of lack of due process and equal protection of the law guaranteed under the Constitution of the United States. *Hart* v. *Virginia,* 298 U.S. 34 (1936).

In *Hart,* the convict challenged the predecessor of Code § 53-291 on the grounds that it was vague and so broad that it embraced homicide committed in self-defense, and thereby denied him due process and equal protection of the law. The Supreme Court of the United States found that there was no substantial federal question presented and dismissed the appeal because, upon appropriate evidence of self-defense, the Virginia trial court had submitted that issue to the jury and this court had subsequently refused a petition for a writ of error. 298 U.S. at 35.

Thus, the predecessor of Code § 53-291 imposing the death penalty has been construed to excuse the killing of a prison guard by a prison inmate acting in self-defense. As we further construe the statute, the death penalty is not mandatory when the evidence shows that the killing resulted from negligence or misadventure in the performance of a lawful act.

Defendant also argues that the statute is vague because Code § 53-9, referred to in the statute as defining a penal institution, was repealed by Acts of 1974 before he was tried and convicted in the court below. There is no merit in that contention. At the time the offense was committed and defendant was indicted, § 53-9 was in full force and effect. Even though the statute was repealed by Acts of 1974, cc. 44-45, at pp. 102, 145, it was reenacted as amended at the same session of the General Assembly, and recodified as Code § 53-19.18 (1974 Repl. Vol.).

We hold that Code § 53-291 is not vague and overbroad and that it does not deny an accused due process and equal protection of the law.

■ Washington contends that the trial court erred in instructing the jury that they should find him guilty of first degree murder and fix his punishment at death if from the evidence they believed beyond a reasonable doubt that he planned to escape and that "during such plan" Captain Monte was killed either by Washington or by Jefferson. We do not agree.

Washington does not argue that the evidence was insufficient to support the instruction. He says that killing a prison guard during an escape constitutes a separate and distinct offense under Code § 53-291(2); that the proof at trial varied fatally from the bill of particulars; and that the Commonwealth, in limiting the prosecution to § 53-291(1), had the burden of proving that Washington fired the fatal shots.

The Commonwealth specified in its bill of particulars that it was proceeding under Code § 53-291(1); that it was unnecessary to state whether or not Washington was attempting to escape; and that it was unable to state which of the two inmates fired the fatal shots. Thus the Commonwealth's case rested upon proof of the felonious killing of a prison guard by a prison inmate. Proof of whether the killing occurred in an attempt to escape, or which of the two inmates fired the fatal shots, was not essential to a conviction under Code § 53-291(1). However, evidence of an attempt to escape and concert of action by Washington and Jefferson was admissible to show the circumstances surrounding the killing, and thus there was no variance between the allegations in the bill of particulars and the facts developed by the evidence.

The instruction complained of, which was also approved in *Jefferson*, properly embodied the theory that Washington could be found guilty under Code § 53-291(1), either as a principal in the first degree or a principal in the second degree, if the jury found that Monte's death resulted from a concert of action or a joint venture engaged in by the two inmates. Code § 18.1-11.[3] The Commonwealth did not have to establish which of the two inmates fired the fatal shots. Washington and Jefferson were equally responsible for the consequences of the acts of the other. *Spradlin* v. *Commonwealth*, 195 Va. 523, 529, 79 S.E.2d 443, 445 (1954).

■ Washington argues that the jury's verdict is void because Code § 53-291 requires the indictment to allege that at the time of the killing

3. The section was reenacted and recodified as §§ 18.2-18, 18.2-19 and 18.2-21, to become effective October 1, 1975, Acts 1975, c. 14, p. 18 at 104.

the defendant was an inmate of a State penal institution, that Monte was a guard employed at the institution, and that the killing was malicious or intentional. In the alternative, he asserts that the offense charged was a "common law homicide," entitling him to instructions upon murder in the second degree and either voluntary or involuntary manslaughter, where the punishment is not mandatory death. We do not agree.

The indictment specifically alleged that "James Edward Washington did feloniously kill Raul Mederires Monte," with the appended citations of Code § 53-291 and subsection 53-291(1).

Rule 3A:7(a), in pertinent part, provides:

> "The indictment . . . shall be a plain, concise and definite written statement . . . describing the offense charged and citing the statute or ordinance that defines the offense . . . ."

Here Washington was informed by the indictment that he was accused of feloniously killing Monte in violation of § 53-291 and subsection 53-291(1), and that the punishment for such an offense was the mandatory death penalty. He well knew, from the invocation of the statute and its subsection, that the essential elements of the case against him were his status as a prison inmate and Monte's status as a prison employee. Indeed, there was a stipulation in the record that Washington was a prison inmate in the custody of Monte, a prison guard, when the killing occurred. Moreover, since the indictment was not challenged before the jury's verdict, Washington waived his right to question its validity. *Forester* v. *Commonwealth*, 210 Va. 764, 767, 173 S.E.2d 851, 854 (1970).

■ Washington contends that he was denied a speedy trial as mandated by the Sixth Amendment to the Constitution of the United States and Virginia Code § 19.1-191, as amended (1960 Repl. Vol., 1974 Cum.Supp.), which is the statutory embodiment of the constitutional right, because the *appellate record* did not show that he was tried within the time required by statute.

At the time the indictment was found against Washington, Code § 19.1-191 provided that a defendant indicted for a felony "shall be forever discharged from prosecution for the offense, if there be three regular terms of circuit . . . court in which the case is pending after he is held without a trial," unless the failure to try him was excused by any of six enumerated exceptions.

The orders entered in the Circuit Court of Powhatan County, which were omitted from the record transmitted to us and which are now a part of the appellate record as a result of our granting certiorari, show that Washington was tried within three terms held by the circuit court as required by statute. *See* Acts 1972, at 1648; Acts 1973, at 1335; Acts 1974, at 1543, fixing terms of court to be held by the Circuit Court of Powhatan County. The trial court's orders, entered of record, show that the delays in trying Washington were caused by continuances granted on Washington's motions; that he was confined to institutions on two occasions for examination into his sanity; and that there was a mistrial resulting from the jury's inability to reach a verdict, all of which are exceptions enumerated in the statute.

It may be that some of the trial court's orders were not signed by the trial judge, but that does not impair the validity or effect of the court's pronouncements spread upon the court's records. *Rollins* v. *Bazile,* 205 Va. 613, 616-18, 139 S.E.2d 114, 117-18 (1964).

The 1974 amendment to Code § 19.1-191, effective July 1, 1974, requiring a trial within nine calendar months from the date of the indictment, unless the delay was excused by certain enumerated exceptions, is not applicable here. The general rule is that statutes are prospective in the absence of an express provision by the legislature. Thus when a statute is amended while an action is pending, the rights of the parties are to be decided in accordance with the law in effect when the action was begun, unless the amended statute shows a clear intention to vary such rights. *Burton* v. *Seifert Plastic Relief Co.,* 108 Va. 338, 350-51, 61 S.E. 933, 938 (1908).

■ Washington asserts that when he was brought to trial in the Circuit Court of Powhatan County on May 22, 1974, and after the jury was empaneled and sworn, court-appointed counsel Richard R. Ryder and Thomas R. Lewis were permitted to withdraw, and a mistrial was declared. He thus argues that the trial had reached the stage at which jeopardy had attached and that the court below erred in not sustaining his plea of double jeopardy.

The transcript of the testimony in the Circuit Court of Powhatan County relating to the trial court's action in allowing Washington's court-appointed attorneys to withdraw was not properly made a part of the record, and we will not consider that transcript. Rule 5:9. However, the trial court's order entered on May 23, 1974, and the transcript of Washington's testimony on his plea of former jeopardy, which are parts of the record, show that Washington consented to the

withdrawal of counsel because of their irreconcilable differences with him and that he concurred in the motion for a mistrial.

Washington claims, however, that his concurrence in the action of the trial court in permitting counsel to withdraw and in declaring a mistrial was not knowingly and intelligently made as to his rights because he was without counsel to advise him.

The same trial judge who heard Washington's testimony on his plea of former jeopardy on August 12, 1974, also presided at his trial on May 23, 1974, when his attorneys were permitted to withdraw from the case and a mistrial was declared. Thus, the trial judge, in overruling Washington's plea of former jeopardy, was in the best position to determine whether Washington knowingly and intelligently concurred in the court's action in declaring a mistrial, and to determine whether Washington's attorneys could provide him effective representation at the May trial under the circumstances then existing.

Moreover, consent of an accused is not required in declaring a mistrial. Code § 19.1-217 (1960 Repl.Vol.) authorizes the trial court to discharge a jury if, in the exercise of that court's sound discretion, manifest necessity requires it.

In *Illinois* v. *Somerville*, 410 U.S. 458 (1973), the trial judge declared a mistrial on motion of the State's attorney and over the accused's objection, because the indictment was fatally defective under Illinois law. There the Supreme Court of the United States said:

> ". . . We hold that the mistrial met the 'manifest necessity' requirement of our cases, since the trial court could reasonably have concluded that the 'ends of public justice' would be defeated by having allowed the trial to continue." 410 U.S. at 459.

The Court also quoted from *Wade* v. *Hunter*, 336 U.S. 684, 689 (1949), as follows:

> " '. . . *What has been said is enough to show that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments.*' " 410 U.S. at 470.

We hold that the trial judge did not abuse his discretion in overruling Washington's plea of former jeopardy.

■ Washington contends that the trial court erred in not declaring a mistrial because the Commonwealth's Attorney, in his closing argument to the jury, repeatedly stated that the Commonwealth's evidence was uncontradicted. He asserts that this argument constituted impermissible comments on defendant's privilege not to testify. We do not agree.

The comments of the Commonwealth's Attorney were directed to the evidence of witnesses who had testified. As a reason for their credibility, the Commonwealth's Attorney added that the testimony of these witnesses was uncontradicted. Thus, these comments were not impermissible argument on defendant's failure to testify. *Miller* v. *Commonwealth*, 153 Va. 890, 901-02, 149 S.E. 459, 462, 68 A.L.R. 1102 (1929). *See also* Annot., 14 A.L.R.3d 723, 739, 757 (1967), where *Miller* is cited along with many cases from other jurisdictions holding that similar arguments made by a prosecuting attorney did not constitute comments on a defendant's exercise of his privilege not to testify.

We find no merit in Washington's contention that the court erred in refusing to grant instructions on his theory of the case. Refused instructions A, B and C would have permitted the jury to find guilt and fix punishment for murder in the first or second degree or for voluntary manslaughter within the limits of Code §§ 18.1-21, 18.1-22 and 18.1-23. They were not applicable under the evidence here. The last paragraph of Code § 53-291 provides that a convict who kills a guard "shall be guilty of first degree murder and be punished by death."

Instruction D would have allowed the jury to find that the killing of Captain Monte was accidental. There was no evidence upon which to justify such an instruction.

Instructions 7, 8 and 13, objected to by Washington, dealt with aiding and abetting and with a principal in the second degree. There is no merit in his contention that "accessorial conduct" is not encompassed by subsection 53-291(1) and the other provisions of Code § 53-291. *Jefferson, supra,* 214 Va. at 752, 204 S.E.2d at 262. *See also* Code § 18.1-11 (1960 Repl.Vol.), *supra.*

We reject Washington's contention that the evidence was insufficient to support his conviction. There was ample evidence from which the jury could conclude that Washington was guilty of the offense charged.

For the reasons stated, the judgment of the court below is

*Affirmed*