Richmond

DAVID RUPLENAS

v.

COMMONWEALTH OF VIRGINIA

March 6, 1981.

Record No. 800594.

Present: Carrico, C.J., Harrison, Cochran, Poff,
Compton, and Thompson, JJ.*

WAYNE TRUNFIO

v.

COMMONWEALTH OF VIRGINIA

March 6, 1981.

Record No. 800551.

Present: Carrico, C.J., Harrison, Cochran, Poff,
Compton, and Thompson, JJ.*

ROY LYNWOOD HAIRSTON

v.

COMMONWEALTH OF VIRGINIA

March 6, 1981.

Record No. 800910.

Present: Carrico, C.J., Harrison, Cochran, Poff,
Compton, and Thompson, JJ.*

---

* Mr. Chief Justice I'Anson presided at the oral arguments of these cases but
retired January 31, 1981.

*John M. DiJoseph* for appellant.

*Robert H. Anderson, III, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

*Robert C. Whitestone (Whitestone, Rodway, Phillips & Brent, P.C.,* on brief), for appellant.

*Robert H. Anderson, III, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

J. Randolph Parker (John C. Lowe; J. Lloyd Snook, III; Lowe and Gordon, Ltd.; Tucker and Coles, P.C., on brief), for appellant.
Vera S. Warthen, Assistant Attorney General (Marshall Coleman, Attorney General, on brief), for appellee.

THOMPSON, J., delivered the opinion of the Court.

### Preliminary Statement.

Each of these appeals from marijuana convictions involves a single issue, *viz.*, whether the penalties provided by Code § 18.2-248.1 must be applied to offenses occurring prior to the effective date of the statute (July 1, 1979), when trial and sentencing occurred after the effective date. Although these cases were tried separately in the courts below, and the evidence was not identical, a construction of the same statutes is required to determine whether the respective trial courts correctly resolved the issues.

### Trial Court Proceedings.

David Ruplenas (Ruplenas) was indicted on September 17, 1979, and charged with (1) possession of marijuana with intent to distribute and (2) distribution of marijuana. The offenses were alleged to have occurred on or about June 13, 1979. Ruplenas was tried before a jury on November 19, 1979, and was convicted of distribution of less than one-half ounce of marijuana in violation of Code § 18.2-248.[1] The jury fixed Ruplenas's punishment at five years' imprisonment. By final order entered January 15, 1980, the trial court sentenced Ruplenas to five years' imprisonment with four years of the sentence suspended conditioned upon Ruplenas's good behavior.

Wayne R. Trunfio (Trunfio) was indicted on May 21, 1979, and charged with (1) possession of marijuana with intent to distribute and (2) distribution of marijuana. The offenses were alleged to have occurred on or about February 16, 1979. Trunfio was tried without a jury on July 16, 1979, and the lower court found him guilty of distribution of less than one-half ounce of marijuana in violation of

---

[1] A plea of *nolle prosequi* to possession with intent to distribute was accepted by the Court.

Code § 18.2-248.[2] On January 18, 1980, Trunfio was sentenced to serve five years' imprisonment. The sentence was suspended, and he was placed on probation for two years.

Roy L. Hairston (Hairston) was indicted in February, 1978, and charged with unlawfully and feloniously selling marijuana on or about November 23, 1977. The case was set for trial on March 13, 1978. After many continuances, some of which were requested by Hairston and some by the Commonwealth, Hairston was tried by a jury on December 11, 1979. The evidence, essentially undisputed, was that Hairston had sold 2.3 pounds of marijuana. The only significant issue at trial, whether the sale had been made as an accommodation, was rejected by the jury. The jury returned their verdict as follows: "We, the Jury, find the defendant guilty of a [sic] selling marijuana, as charged in the indictment, and fix his punishment at (5) years confinement in the penitentiary and a fine of $1.00." Judgment was entered on the verdict on February 18, 1980.

### Statutory Provisions.

Prior to July 1, 1979, marijuana was a Schedule I controlled substance and penalties regarding its possession, sale, and other related offenses were contained in Code § 18.2-248. The 1979 General Assembly chose to treat marijuana offenses separate from other controlled-substance violations and accordingly added § 18.2-248.1 to the Code.[3] The three offenses which are the subjects of these appeals bring us to inquire whether Code § 18.2-248.1 should have been applied in regard to the defendants' sentencing where trials and final judgments occurred after the effective date of the mitigating statute.

■ Our guiding rule of construction is set forth in Code § 1-16 whose ancestor is Code 1849, Title 9, ch. 16, § 18. Code § 1-16 was an attempt to change the results enunciated in the cases of *Common-*

---

[2] A plea of *nolle prosequi* to possession with intent to distribute was accepted by the Court.

[3] Acts 1979, ch. 435 at 664, states in pertinent part:

§ 18.2-248.1. *Penalties for sale, gift, distribution or possession with intent to sell, give or distribute marijuana.*—Except as authorized in the Drug Control Act, Chapter 15.1 (§ 54-524.1 et seq.) of Title 54 of this Code, it shall be unlawful for any person to sell, give, distribute or possess with intent to sell, give or distribute marijuana.

(a) Any person who violates this section with respect to:

(1) not more than one-half ounce of marijuana is guilty of a Class 1 misdemeanor;

(2) more than one-half ounce but not more than five pounds of marijuana is guilty of a Class 5 felony; . . . .

*wealth* v. *Leftwich,* 26 Va. (5 Rand.) 657 (1827), *Attoo* v. *Commonwealth,* 4 Va. (2 Va. Cas.) 382 (1823), and *Scutt* v. *Commonwealth,* 4 Va. (2 Va. Cas.) 54 (1817). Code § 1-16 provides as follows:

> § 1-16. **Repeal not to affect liabilities; mitigation of punishment.** No new law shall be construed to repeal a former law, *as to any offense committed against the former law, . . .* any *penalty,* forfeiture, or *punishment incurred,* or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense . . . or *any penalty, forfeiture, or punishment so incurred . . .* before the new law takes effect; . . . and if any penalty, forfeiture, or punishment be mitigated by any provision of the new law, such provision *may,* with the consent of the party affected, *be applied to any judgment pronounced after the new law takes effect.* [Emphasis added.]

Specifically, we are concerned with the last clause of the statute as to mitigatory punishment. In the Trunfio and Ruplenas cases, the new statute changes the grade of the offenses in each instance from a felony to a Class 1 misdemeanor, and in the Hairston case the new statute changes the offense to a Class 5 felony.

As pertinent here, we have construed Code § 1-16 in at least two cases. In *Conaway* v. *Commonwealth,* 118 Va. 792, 88 S.E. 75 (1916), Conaway was alleged to have murdered her husband in January, 1914. At that time punishment for murder in the first degree was death. Prior to her July 1914 trial, the penalty statute was amended to change the penalty for first degree murder to death *or* life imprisonment. Although it is rare for a defendant to desire the application of a more severe penalty, Conaway objected to being tried under the new, mitigatory statute. Nevertheless, Conaway was arraigned and tried under the new statute, resulting in a verdict of guilty and the imposition of a life sentence. On appeal this court reversed, holding that under the provisions of Code § 6 (1887) (now Code § 1-16) the new, lesser penalty could not be applied without the consent of the defendant.

Sixty-one years later we decided *Abdo* v. *Commonwealth,* 218 Va. 473, 237 S.E.2d 900 (1977). Abdo was convicted on December 4, 1975, of manufacturing phencyclidine, a controlled substance, and punishment was fixed by a jury at twelve years in the penitentiary. On January 8, 1976, final judgment on the verdict was entered by the trial court, and Abdo subsequently petitioned this court for a writ of error. On July 1, 1976, while Abdo's petition for a writ of

error was pending, the grade of the offense of manufacturing phencyclidine was changed to a Class 1 misdemeanor. On August 3, 1976, his petition for writ of error still pending, Abdo moved the trial court to reduce his penalty to that fixed for a Class 1 misdemeanor in accordance with the new statute. On September 29, 1976, the petition for writ of error was refused, and on October 1, 1976, the trial court denied Abdo's motion for a reduction of sentence. Abdo then sought and obtained a writ of error to the court's order denying a reduction of sentence.

We pointed out in *Abdo* that Code § 1-16 was a saving statute intended to change the common-law rule of abatement.[4] We said:

> *The election of the Commonwealth to prosecute under* the new law, and *the privilege of an accused to consent* to be tried thereunder, must be exercised before judgment is pronounced. [Emphasis added.]
>
> . . . . Defendant argued that Code § 1-16 mandated the trial court to mitigate his punishment in accordance with the provisions of the new law. The statute does not so provide. Further, the language of the statute is that the court *may* apply the provisions of the new law and the provision to be applied must be applied to a "judgment pronounced after the new law takes effect". No such judgment was ever pronounced in this case after the January 8, 1976 judgment.

218 Va. at 478, 237 S.E.2d at 903. The literal language of *Abdo* directs that before a new penalty may be imposed the Commonwealth must first elect to proceed under the new law and then the defendant, as the party affected, must consent to its application. Without the concurrence of both parties the previous penalty must apply.

The circumstances as set forth in *Abdo* do not precisely align with the cases at bar. In *Abdo* the new penalty did not become effective until almost six months after entry of the trial court's final order. In the instant cases Code § 18.2-248.1 was already in effect at the commencement of the defendants' trials.

---

[4] In *Abdo*, 218 Va. at 475, 237 S.E.2d at 901, we said:

Defendant argues that Virginia is a common-law state, citing Code § 1-10, and says that:

"At common law, the repeal of a criminal statute abated all prosecutions which had not reached final disposition in the highest court authorized to review them . . . . Abatement by repeal included a statute's repeal and reenactment with different penalties . . . . And the rule applied even when the penalty was reduced . . . . *Bradley* v. *United States*, 410 U.S. 605, 608 (1973)."

Ruplenas, Trunfio and Hairston would have us rely on *State ex rel. Arbogast* v. *Mohn,* 260 S.E.2d 820 (W. Va. 1979). In *Arbogast* the West Virginia legislature amended the definition of grand larceny by raising the required minimum value of the property taken from $50 to $200. The defendant, Arbogast, allegedly stole goods valued at $100 which, on the date of the alleged commission of the offense, was a felony. By the time of trial, however, the new statute had gone into effect converting an offense of the type committed by Arbogast into the misdemeanor of petit larceny. In deciding which statute should apply, the West Virginia court said:

> When a general savings statute provides for the application of mitigated penalties upon the election of the affected party, he is entitled to choose the law under which he wishes to be sentenced.
>
> . . . .
>
> The legislature, by virtue of the provision of our savings statute, has conferred upon the criminal defendant the right to elect the sentencing scheme under which he will be punished. . . .

260 S.E.2d at 824. The court, relying on a West Virginia statute nearly identical to our Code § 1-16, concluded that the *defendant* has an *exclusive* right to choose the statute under which he will be sentenced.

We think *Abdo* controls here and decline to follow *Arbogast*. We hold that the penalty in existence at the time of the offense should be applied unless the Commonwealth first elects to proceed under the new statute and obtains the consent of the defendant to do so. A contrary rule might encourage dilatory tactics and procrastination which would hamper the judicial process. Further, under the *Arbogast* rule, two or more offenses occurring at the same time could conceivably receive different penalties depending upon fortuitous circumstances as to when the cases come to trial.

Of course, the legislature could have expressly addressed this situation in its enactment of Code § 18.2-248.1, but it did not do so. We are relying on the general rule of construction prescribed by Code § 1-16 as interpreted in *Abdo*.

We therefore hold that Code § 18.2-248.1 is not applicable in any of these three cases absent the Commonwealth's election to proceed under the new statute and the defendants' consent to such an election.

*Affirmed.*
*(Records Nos.*
800594; 800551
and 800910.)