COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present: Judges Beales, AtLee and Chaney
Argued at Norfolk, Virginia


JESSIE LEE GREEN

                                                    OPINION BY
v.       Record No. 0759-21-1              JUDGE RANDOLPH A. BEALES
                                                    JUNE 14, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF GLOUCESTER COUNTY
Jeffrey W. Shaw, Judge

(Sydney H. Speight, on brief), for appellant. Appellant submitting
on brief.

Virginia B. Theisen, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Jessie Lee Green appeals an order of the Circuit Court of Gloucester County revoking his

suspended sentences for assault and battery on a law enforcement officer and petit larceny. His

lone assignment of error on appeal is that the circuit court "erred in sentencing the Defendant to

a time period of incarceration not prescribed by [Code §] 19.2-306.1, thus abusing its discretion

in this case and making a mistake of law."

## I. BACKGROUND

### A. Green's Prior Convictions and Suspended Sentences

In August 2018, Green was convicted of assault and battery on a law enforcement officer,

a felony under Code § 18.2-57(C). In December 2018, he was sentenced to three years of

incarceration. Six months of that sentence constituted a mandatory minimum. Aside from

imposing the six-month mandatory minimum as an active sentence to be served, the trial court

suspended the remaining two years and six months of Green's sentence for a period of five years.

The suspension was conditioned on Green's compliance with several specific terms set forth by the trial court. In relevant part, the trial court placed Green on supervised probation for five years following his release from incarceration.

In 2019, while Green was on probation, he was arrested and charged with larceny. He pled guilty to petit larceny in September 2019. By order entered on October 1, 2019, Green was convicted and sentenced to twelve months of incarceration for the petit larceny. The trial court suspended nine months of that sentence for a period of five years. Once again, the trial court expressly conditioned the suspension, in part, on Green's compliance with supervised probation for five years following his release from confinement.

As a result of Green's petit larceny conviction, the Circuit Court of Gloucester County revoked the suspended sentence of two years and six months remaining for Green's felony assault conviction. The circuit court ordered Green to serve one year of that sentence and re-suspended the remaining one year and six months. The circuit court again placed Green on supervised probation following his release from incarceration. Green was released in 2020.

Upon his release from incarceration in 2020, Green remained subject to a suspended sentence of one year and six months for the felony assault conviction and a suspended sentence of nine months for the petit larceny conviction. Both suspensions were expressly conditioned on Green's successful completion of supervised probation.

B. Revocation Proceedings Beginning in April 2021

On April 1, 2021, Probation and Parole Officer Daylin Paulino prepared a major violation report documenting multiple probation violations that Green committed while on probation for his felony assault conviction. The report stated that Green had tested positive for amphetamines, oxycodone, and methamphetamine on separate occasions during the period of his supervised probation. Green's probation officer further reported, "Mr. Green has used illegal substances

throughout his supervision and has continued his use while in treatment," and "[h]e has failed to maintain contact with this officer and has missed several appointments." The major violation report cited violations of Condition 6 ("I will follow the Probation and Parole Officer's instructions and will be truthful, cooperative, and report as instructed.") and Condition 8 ("I will not unlawfully use, possess or distribute controlled substances or related paraphernalia."). Green's probation officer filed the major violation report in the circuit court the next day—April 2, 2021. Consequently, a capias was issued for Green's arrest on April 7, 2021.

In addition, on April 26, 2021, a different probation officer reported Green's non-compliance with the terms of his probation on the petit larceny conviction. The letter cited Green for numerous violations, including (1) failure to maintain contact with his probation officer, (2) failure to complete substance abuse treatment, and (3) failure to remain drug free. Therefore, the circuit court issued a second capias for Green's arrest on May 4, 2021.

Green was arrested and taken into custody on June 1, 2021. The circuit court ordered that Green remain incarcerated pending a hearing to show cause why his suspended sentences should not be revoked for the violations documented by his probation officers.

On June 21, 2021, Green appeared for his revocation hearing. At the outset of the revocation hearing, the circuit court judge asked, "[I]s the defendant ready to proceed?" Counsel for Green replied, "Judge, we are not" and advised the court that the defense was requesting a continuance. Consequently, at the request of Green's counsel, the circuit court granted a continuance for the defense. In granting the continuance, the order stated, "This case came before the Court for the defendant to answer Capiases to Show Cause" and further stated that the hearing would be continued until July 13, 2021.

In 2021, the General Assembly amended Code § 19.2-306. The amendments became effective on July 1, 2021. That statute now limits the period of active incarceration that a circuit

court can impose after revoking a probationer's suspended sentence. *See* 2021 Va. Acts Sp. Sess. I c. 538, Sp. Sess. I. Subsection (C) of Code § 19.2-306 now provides that the circuit court may "impose a sentence in accordance with the provisions of § 19.2-306.1." *Id.* In turn, Code § 19.2-306.1 contains specific limitations on sentencing that apply when a circuit court bases its revocation of a suspended sentence on what the statute refers to as certain "technical violations" enumerated in the statute. *See id.*

When the parties returned to court on July 13, 2021, the attorney for the Commonwealth explained that two different sets of revocation sentencing guidelines had been prepared for the circuit court's consideration. The guidelines that were prepared according to the law in effect before July 1 recommended an active sentence ranging from one year to one year and six months. The guidelines that were prepared according to the law in effect after July 1 contained a range of "up to 14 days."

The Commonwealth urged the circuit court to sentence Green according to the law that was effective at the time Green was placed on probation. The Commonwealth took the position that "the first set of guidelines apply because he was put on probation long before July 1st when the changes in the guidelines came into effect, so he should be under the old system." Counsel for Green countered that the second set of guidelines should apply and that Green's sentence should not exceed fourteen days because the revocation hearing took place after July 1.[1]

The circuit court, relying on this Court's decision in *Taylor v. Commonwealth*, 44 Va. App. 179 (2004), noted that "when a statute is amended while an action is pending, the rights of the parties are to be deemed in accordance with the law in effect when the action is begun,

---

[1] Although the parties described their arguments to the circuit court as a dispute over the sentencing *guidelines*—the application of which is discretionary and not reviewable on appeal according to Code § 19.2-298.01(F)—the record makes clear that the circuit court had actually adjudicated the underlying issue of whether the July 1, 2021 *statutory* amendments governed the sentencing decision during Green's revocation hearing.

unless the amended statute shows a clear intention to vary such rights." The circuit court judge further stated that the result "would be dictated by Virginia Code Section 1-239[.]" The circuit court concluded that it needed to apply "the law in effect at the time the probation violation was instituted," which was the law in effect before July 1, 2021. Upon finding that Green had violated his probation on both convictions, the circuit court revoked his suspended sentences without re-suspending any of the one year and six months remaining on the assault conviction or any of the nine months remaining on the petit larceny conviction. The circuit court ordered the sentences to run concurrently, for an active sentence of one year and six months. This appeal followed.

## II. ANALYSIS

### A. Standard of Review

On appeal, "[w]e 'view the evidence received at [a] revocation hearing in the light most favorable to the Commonwealth, as the prevailing party, including all reasonable and legitimate inferences that may properly be drawn from it.'" *Johnson v. Commonwealth*, 296 Va. 266, 274 (2018) (second alteration in original) (quoting *Henderson v. Commonwealth*, 285 Va. 318, 329 (2013)). "In revocation appeals, the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013) (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)). However, "[u]nder well-established principles, an issue of statutory interpretation is a pure question of law which we review de novo." *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007). Specifically, "the issue of whether a statute should be applied retroactively presents a question of law that we review *de novo* on appeal." *Taylor v. Commonwealth*, 44 Va. App. 179, 184 (2004).

B.  The Law Governing Revocation and the Legislation Effective July 1, 2021

"When coupled with a suspended sentence, probation represents 'an act of grace on the part of the Commonwealth to one who has been convicted and sentenced to a term of confinement.'"  *Price v. Commonwealth*, 51 Va. App. 443, 448 (2008) (quoting *Pierce v. Commonwealth,* 48 Va. App. 660, 667 (2006)); *see also Rease v. Commonwealth*, 227 Va. 289, 295 (1984) (noting that when a probationer absconds from supervision, "the act of grace in granting probation in the first place is rendered a nullity").  "In the absence of a clear statutory or constitutional violation, we defer to the discretion of the circuit court regarding the decision of whether any act of grace is appropriate in the first instance[.]"  *Garibaldi v. Commonwealth*, 71 Va. App. 64, 69 (2019).  "Of course, the alternative to probation is incarceration[.]"  *Id.*  As the Supreme Court has stated, "When a trial judge suspends a sentence, however, he does not make a contract with the accused, but only extends to him the opportunity which the state affords him to repent and reform."  *Richardson v. Commonwealth*, 131 Va. 802, 810 (1921).  "It is the free gift of the commonwealth, and not a contract to relieve him from the punishment which fits his crime."  *Id.*  Accordingly, the Supreme Court has repeatedly emphasized that "[p]robation statutes are highly remedial and should be liberally construed *to provide trial courts a valuable tool* for rehabilitation of criminals."  *Burnham v. Commonwealth*, 298 Va. 109, 116 (2019) (emphasis added) (quoting *Grant v. Commonwealth*, 223 Va. 680, 684 (1982)); *accord Peyton v. Commonwealth*, 268 Va. 503, 508 (2004); *Dyke v. Commonwealth*, 193 Va. 478, 484 (1952); *Richardson*, 131 Va. at 811.

Code § 19.2-306(A) provides the statutory authority for a circuit court to revoke a suspended sentence.  That statute states, "In any case in which the court has suspended the execution or imposition of sentence, the court may revoke the suspension of sentence for any

cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court." Code § 19.2-306(A).

Prior to July 1, 2021, Code § 19.2-306(C) provided,

> If the court, after hearing, finds good cause to believe that the defendant has violated the terms of suspension, then: (i) if the court originally suspended the imposition of sentence, the court shall revoke the suspension, and the court may pronounce whatever sentence might have been originally imposed or (ii) if the court originally suspended the execution of the sentence, the court shall revoke the suspension and the original sentence shall be in full force and effect.

2021 Va. Acts Sp. Sess. I c. 538. Effective July 1, 2021, Code § 19.2-306(C) was "amended and reenacted" to provide that "[i]f the court, after hearing, finds good cause to believe that the defendant has violated the terms of suspension, then the court may revoke the suspension and impose a sentence in accordance with the provisions of § 19.2-306.1." *Id.* The newly enacted Code § 19.2-306.1 limits the period of active incarceration that a circuit court can impose for what the statute refers to as certain "technical violations" enumerated under the new statute. *Id.* As pertinent to the matter now before us, Code § 19.2-306.1 provides that "'technical violation' means a violation based on the probationer's failure to . . . (v) follow the instructions of the probation officer, be truthful and cooperative, and report as instructed . . . [or] (vii) refrain from the use, possession, or distribution of controlled substances or related paraphernalia[.]" *Id.*

<u>C. The Circuit Court Did Not Err in Applying the Law in Effect When Green Committed the Relevant Violations and When His Revocation Proceeding Began</u>

Green assigns error to the circuit court's ruling as follows: "The [circuit] court erred in sentencing the Defendant to a time period of incarceration not prescribed by [Code § ] 19.2-306.1, thus abusing its discretion in this case and making a mistake of law." He specifically argues that "[i]n sentencing the Defendant to his full term of suspended time, the

[circuit] Court erred by failing to stay within the range of punishment allotted by 19.2-306.1 and therefore abused its discretion."

Green was initially placed on probation in 2018 for a period of five years. Green's probation officer filed the major violation report documenting Green's numerous probation violations with the Circuit Court of Gloucester County on April 2, 2021. Based on these violations, the circuit court issued a capias for Green's arrest on April 7 and then issued a second capias for his arrest on May 4, 2021. Green was taken into custody when the capiases were executed on June 1. When the parties "came before the Court for the defendant to answer Capiases to Show Cause" at Green's scheduled revocation hearing on June 21, 2021, Green's counsel requested and ultimately obtained a continuance on behalf of the defense. Under these circumstances, the record shows that the judicial proceedings related to the revocation of Green's suspended sentences began before the statutory amendments took effect on July 1, 2021. *See, e.g.*, *Abdo v. Commonwealth*, 218 Va. 473, 478 (1977) ("There is authority that the word 'proceedings' includes each and every step from the issue of a criminal complaint to the conclusion of the case, and that the word is broad enough to cover any act, measure, step or all steps in a course taken in conducting litigation, civil or criminal."); *Sigmon v. Commonwealth*, 200 Va. 258, 267 (1958) (noting that several authorities "define 'proceeding' as broad enough to cover any act, measure, step or all steps in a course taken in conducting litigation, civil or criminal").

In this matter, therefore, as the Supreme Court has stated numerous times, "Our analysis is guided by the fundamental principles of statutory construction that retroactive laws are not favored, and that a statute is always construed to operate prospectively unless a contrary legislative intent is manifest." *Berner v. Mills*, 265 Va. 408, 413 (2003); *see also City of Charlottesville v. Payne*, 299 Va. 515, 530 (2021) ("Unless a contrary intent is *manifest beyond*

- 8 -

*reasonable question* on the face of an enactment, a statute is construed to operate prospectively only." (emphasis added)); *Bailey v. Spangler*, 289 Va. 353, 359 (2015) ("Absent an express manifestation of intent by the legislature, this Court will not infer the intent that a statute is to be applied retroactively."); *Washington v. Commonwealth*, 216 Va. 185, 193 (1975) ("The general rule is that statutes are prospective in the absence of an express provision by the legislature.").

In *Washington*, the Supreme Court held, "[W]hen a statute is amended while an action is pending, the rights of the parties are to be decided in accordance with the law in effect when the action was begun, unless the amended statute shows a clear intention to vary such rights." *Washington*, 216 Va. at 193. Nothing in the text of the amendments to Code § 19.2-306 or in Code § 19.2-306.1 shows a clear legislative intent for the amended statutory scheme governing revocation proceedings to apply to revocation proceedings that began prior to July 1, 2021. Therefore, because the plain language of Code § 19.2-306 and Code § 19.2-306.1 lacks any indication of retroactive intent on the part of the General Assembly, "the rights of the parties are to be decided in accordance with the law in effect when the action was begun[.]" *See Washington*, 216 Va. at 193.[2]

---

[2] The dissent reaches a different conclusion based on its reasoning that "the unambiguous plain meaning of the phrases 'a first technical violation,' 'any second technical violation,' and 'a suspended sentence' encompasses all such probation violations and all suspended sentences—whether or not they occurred or began before Code § 19.2-306.1 became effective on July 1, 2021."

The statutory language cited by the dissent refers to the *type* of violation at issue—*i.e.*, whether the violation is a technical violation or a non-technical violation under the statute. Read in the full context of Code § 19.2-306.1(C), the words "a" and "any" simply do not manifest the broad legislative intent the dissent suggests they do. The General Assembly's reference to "a first technical violation," "any second technical violation," and "a suspended sentence" in Code § 19.2-306.1 does not "show[] a clear intention" to apply the statute retroactively, *see Washington*, 216 Va. at 193, nor does it constitute an "express manifestation of intent by the legislature" to apply the statute retroactively, *see Bailey*, 289 Va. at 359. Given the Supreme Court's instruction that courts will construe a statute to operate prospectively "[u]nless a contrary intent is manifest beyond reasonable question on the face of an enactment," *Payne*, 299 Va. at 530, it would come as a surprise to many members of the legislature to learn that they expressed

Furthermore, according to Code § 1-238:

> "Reenacted," when used in the title or enactment of a bill or act of the General Assembly, means that the changes enacted to a section of the Code of Virginia or an act of the General Assembly are in addition to the existing substantive provisions in that section or act, and are effective prospectively *unless the bill expressly provides that such changes are effective retroactively on a specified date*.

(Emphasis added). "Based on this provision, a 'reenacted' statute will be applied retroactively only if the bill or act of assembly containing the legislation explicitly and unequivocally meets the requirements of Code § 1-13.39:3"—now Code § 1-238. *Berner*, 265 Va. at 413 (interpreting a predecessor statute to Code § 1-238).[3] If a reenacted statute does not "contain an express provision that the statutory changes would be effective retroactively on a specified date," the Supreme Court has held that "[t]he absence of this required language from the bill compels a conclusion that the amendments to those sections are effective prospectively, not retroactively." *Id.* at 413-14; *accord Taylor*, 44 Va. App. at 186-87.

The General Assembly specifically stated "[t]hat §§ 19.2-303, 19.2-303.1, and 19.2-306 of the Code of Virginia are amended *and reenacted* and that the Code of Virginia is amended by adding a section numbered 19.2-306.1[.]" 2021 Va. Acts Sp. Sess. I c. 538 (emphasis added). Thus, according to Code § 1-238 and according to binding Supreme Court case law, the

retroactive intent simply by using the words "a first technical violation," "any second technical violation," and "a suspended sentence" in Code § 19.2-306.1(C).

[3] Former Code § 1-13.39:3 provided:

> Whenever the word "*reenacted*" is used in the title or enactment of a bill or act of assembly, it shall mean that the changes enacted to a section of the Code of Virginia or an act of assembly are in addition to the existing substantive provisions in that section or act, and are effective prospectively *unless the bill expressly provides that such changes are effective retroactively on a specified date*.

*Berner*, 265 Va. at 413 (second emphasis added).

- 10 -

amendment *and reenactment* of Code § 19.2-306 during the pendency of Green's revocation

proceeding compels us to look solely to the express language of the amendment in determining

whether to apply it retroactively.  *See Berner*, 265 Va. at 413.  The amended version of Code

§ 19.2-306 certainly does not "contain an express provision that the statutory changes would be

effective retroactively on a specified date," and "[t]he absence of this required language from the

bill compels a conclusion that the amendments to those sections are effective prospectively, not

retroactively."  *See id.* at 413-14.  To hold otherwise "would require this Court to add language

to the statute the General Assembly has not seen fit to include, an exercise in which the Court is

not free to engage."  *Holsapple v. Commonwealth*, 266 Va. 593, 599 (2003); *see also*

*Doulgerakis v. Commonwealth*, 61 Va. App. 417, 419 (2013) (noting that "we determine the

legislative intent from the words used in the statute").  In other words, the General Assembly

easily could have stated that the amended statute could have been effective retroactively and

before the normal July 1, 2021 date for newly enacted legislation to become effective, but it did

not.  The words "retroactive" or "retroactively" are *nowhere* to be found in the statute.  The

General Assembly could have explicitly stated that the amended statute applies to revocation

proceedings commenced prior to that date, but it did not do so.  *See Payne*, 299 Va. at 531

("[T]he General Assembly knows how to make its intent manifest that a statute has retroactive

application.").

       In addition, the circuit court expressly relied on Code § 1-239 in rendering its decision in

this case.  Code § 1-239 provides:

> No new act of the General Assembly shall be construed to repeal a
> former law, as to any offense committed against the former law, or
> as to any act done, any penalty, forfeiture, or punishment incurred,
> or any right accrued, or claim arising under the former law, or in
> any way whatever to affect any such offense or act so committed
> or done, or any penalty, forfeiture, or punishment so incurred, or
> any right accrued, or claim arising before the new act of the
> General Assembly takes effect; *except that* the proceedings

- 11 -

> thereafter held shall conform, so far as practicable, to the laws in force at the time of such proceedings; and *if any penalty, forfeiture, or punishment be mitigated by any provision of the new act of the General Assembly, such provision may, with the consent of the party affected, be applied to any judgment pronounced after the new act of the General Assembly takes effect.*

(Emphases added). The Supreme Court interpreted and applied the predecessor statute to Code § 1-239 in an analogous case, *Ruplenas v. Commonwealth*, 221 Va. 972 (1981).

In *Ruplenas*, three defendants were convicted of marijuana distribution offenses. 221 Va. at 974. The lone issue presented in all three appeals was "whether the penalties provided by Code [§] 18.2-248.1 must be applied to offenses occurring prior to the effective date of the statute (July 1, 1979), when trial and sentencing occurred after the effective date." *Id.* Because the statute did not expressly state that it would apply to offenses committed before its effective date, the Supreme Court held that its "guiding rule of construction is set forth in Code [§] 1-16"—the predecessor statute to Code § 1-239. *Id.* at 975. The Supreme Court said that "before [the] new penalty may be imposed the Commonwealth must first elect to proceed under the new law and then the defendant, as the party affected, must consent to its application. Without the concurrence of both parties the previous penalty must apply." *Id.* at 977. The Supreme Court ruled, "We hold that the penalty in existence at the time of the offense should be applied unless the Commonwealth first elects to proceed under the new statute and obtains the consent of the defendant to do so." *Id.* at 978.

Applying these principles to the case at bar, we hold that the circuit court did not err in applying the penalty in existence at the time Green violated the terms of his probation and when his revocation proceeding began.[4] *See id.* at 977. The Commonwealth objected to the

---

[4] This case does not require the Court to distinguish between the penalty in existence at the time Green violated his probation and the penalty in existence when his revocation proceeding began. The law was actually the same at the time of both events in this case now before us. Regardless of whether the triggering event is the probation violation itself or the

- 12 -

application of Code § 19.2-306.1, and the absence of an agreement between the parties to proceed under the new statute forecloses the possibility of applying that statute in mitigation of Green's punishment. *See* Code § 1-239; *Ruplenas*, 221 Va. at 978 ("Without the concurrence of both parties the previous penalty must apply.").

Moreover, the circumstances of this case echo the serious practical concerns expressed by the Supreme Court in *Ruplenas* that "[a] contrary rule might encourage dilatory tactics and procrastination which would hamper the judicial process" and that "two or more offenses occurring at the same time could conceivably receive different penalties depending upon fortuitous circumstances as to when the cases come to trial." *Ruplenas*, 221 Va. at 978. In this case, the parties originally appeared in court for Green's revocation hearing on June 21, 2021. At the request of Green's counsel, the circuit court granted a continuance to allow defense counsel additional time to prepare and continued the hearing to July 13, 2021. The requirement that *both* parties consent to proceed under the new law is necessary to preclude the kind of gamesmanship that would be incentivized by allowing a brief continuance to effectively change the entire outcome of Green's revocation proceeding.[5]

_____

instituting of revocation proceedings in circuit court, the result in this particular case would be the same under either scenario. Judicial restraint dictates that we do not need to reach the question of which is the actual triggering event date because each of these dates occurs before July 1, 2021. Therefore, we refrain from weighing in on that particular question given that the answer would have been the same result in this case and would have no effect on our analysis. As the Supreme Court has often stated, "[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017)).

[5] A contrary decision could result in the precise kind of unequal treatment under the law anticipated by the Supreme Court in *Ruplenas*. *See* 221 Va. at 978. If we were to adopt the dissent's interpretation, two offenses committed at the same time could lead to entirely different results depending on unpredictable circumstances such as whether the circuit court decides to exercise its discretion in favor of the party asking for a continuance by granting it, whether the non-moving party decides to object to the continuance, or whether the court docket is backlogged to a point that a hearing is unavailable until after a new statute or amended statute takes effect. If the circuit court's mere exercise of its discretion to grant a three-week

- 13 -

Consequently, for all of the reasons noted *supra*, we hold that the circuit court did not err in the way it handled the revocation of Green's sentence—in accordance with the law that was in effect when Green committed the relevant probation violations and also in effect when his revocation proceeding began.

## III. CONCLUSION

In short, Green's suspended sentences were expressly conditioned on his successful completion of supervised probation. However, Green repeatedly violated the terms of his probation, as documented by his probation officers in April 2021. He was arrested in June 2021. He appeared for his scheduled revocation hearing on June 21, 2021—at which time he secured a three-week continuance at the request of his counsel. Thus, Green's revocation proceeding actually began before the newly amended statute involved in this matter took effect on July 1, 2021.

When the parties returned for Green's rescheduled revocation hearing on July 13, 2021, the circuit court correctly applied the version of Code § 19.2-306 that was in effect at the time Green violated his probation and that was in effect when his revocation proceeding began. When statutory amendments become effective that would affect a pending matter and the amended statute does not provide that it applies retroactively, courts should apply the law that was in effect before the statutory amendments took effect unless the plain language of the amended statute shows a contrary intent. *See Washington*, 216 Va. at 193. Furthermore, when a reenacted statute does not "contain an express provision that the statutory changes would be effective retroactively on a specified date," the Supreme Court has held that "[t]he absence of this required language from the bill compels a conclusion that the amendments to those sections are effective

___

continuance in this case resulted in actually changing the entire outcome of Green's revocation, we would incentivize potential future mischief and gamesmanship among parties in future cases while departing from binding Supreme Court precedent.

- 14 -

prospectively, not retroactively." *Berner*, 265 Va. at 413-14. The amended statute before us here does not state that it applies to revocation proceedings commenced prior to its effective date. Although the General Assembly could have written it in that way, the General Assembly simply did not choose to include any such express provision when it amended and reenacted Code § 19.2-306. We are therefore bound to conclude that the amended statute does not govern revocation proceedings that were commenced *before* July 1, 2021, when the amended statute took effect.

Finally, newly enacted Code § 19.2-306.1 similarly lacks any express manifestation of legislative intent for the statute to apply to revocation proceedings that began before this new statute became effective on July 1, 2021. In an analogous case, the Supreme Court held "that the penalty in existence at the time of the offense should be applied unless the Commonwealth first elects to proceed under the new statute and obtains the consent of the defendant to do so." *Ruplenas*, 221 Va. at 978. Here, the Commonwealth did not agree to proceed under the new law, and, as the Supreme Court has held, "Without the concurrence of both parties the previous penalty must apply." *See id.* at 977. Thus, the circuit court did not err in applying the penalty that existed at the time when Green violated his probation and at the time when the proceeding to revoke his suspended sentences began.

For all of these reasons, upon finding that Green had repeatedly violated the terms of his probation, the circuit court did not abuse its discretion by ordering Green to serve his suspended sentences for assault and battery on a law enforcement officer and for petit larceny. Consequently, we uphold the judgment of the circuit court.

*Affirmed.*

Chaney, J., dissenting.

The General Assembly's enactment of Code § 19.2-306.1 amended the Code of Virginia with the clear legislative intent to modify the sentencing procedure in probation revocation hearings and to limit the authority of trial courts to impose a term of active incarceration for violations of the terms and conditions of probation and suspended sentences. The majority's opinion misconstrues Code § 19.2-306.1 in affirming the trial court's revocation order. The trial court failed to follow the applicable sentencing procedure under Code § 19.2-306.1 and imposed sentences of active incarceration in violation of the sentencing limitations in Code § 19.2-306.1. Therefore, I respectfully dissent.

## I. CONSTRUCTION OF CODE § 19.2-306.1

### A. Principles of Statutory Construction

"The primary objective of statutory construction is to ascertain and give effect to legislative intent." *Jordan v. Commonwealth*, 72 Va. App. 1, 7 (2020) (quoting *Commonwealth v. Zamani*, 256 Va. 391, 395 (1998)). "Under basic principles of statutory construction, we must determine the General Assembly's intent from the words contained in a statute." *Washington v. Commonwealth*, 272 Va. 449, 455 (2006) (quoting *Commonwealth v. Diaz*, 266 Va. 260, 264-65 (2003)); *see also Wardell Orthopaedics v. Colonna's Shipyard*, 72 Va. App. 296, 306 (2020) ("[E]very word of a statute must be given meaning." (quoting *Gray v. Graves Mountain Lodge*, 26 Va. App. 350, 356 (1998))). "When the language of a statute is unambiguous, we are bound by its plain meaning." *Boyle v. Anderson*, ___ Va. ___, ___ (Apr. 14, 2022). "If the statute is clear on its face, we rely on the plain words, and no interpretation is necessary." *Tanner v. Commonwealth*, 72 Va. App. 86, 99 (2020).

"[A] statute should be read and considered as a whole, and the language of a statute should be examined in its entirety to determine the intent of the General Assembly from the

words contained in the statute." *Ford Motor Co. v. Gordon*, 281 Va. 543, 549-50 (2011) (alteration in original) (quoting *Oraee v. Breeding*, 270 Va. 488, 498 (2005)). "Statutes dealing with the same subject matter must be read together so as to adhere to the legislative intent underlying them and to permit them to operate together without conflict." *McKinney v. Virginia Surgical Assocs, P.C.*, 284 Va. 455, 460 (2012) (citing *City of Lynchburg v. English Constr. Co.*, 277 Va. 574, 584 (2009)).

B. Modified Sentencing Procedure & Limitations on Sentencing Authority

To properly construe Code §§ 19.2-306 and 19.2-306.1, the analysis must begin with consideration of the statutory language chosen by the legislature. The sentencing procedure for probation revocation hearings under former Code § 19.2-306(C) provided that "[i]f the court, after hearing, finds good cause to believe that the defendant has violated the terms of suspension, then . . . if the court originally suspended the execution of the sentence, the court shall revoke the suspension and the original sentence shall be in full force and effect." 2016 Va. Acts c. 718 (repealed 2021). The General Assembly further provided that upon revocation of a defendant's previously suspended sentence, "[t]he court may again suspend all or any part of this sentence." *Id.*

Effective July 1, 2021, the General Assembly modified the sentencing procedure in probation revocation hearings. At the time of sentencing in Green's probation revocation hearing, Code § 19.2-306(C) provided that "[i]f the court, after hearing, finds good cause to believe that the defendant has violated the terms of suspension, then the court may revoke the suspension and impose a sentence in accordance with the provisions of § 19.2-306.1." Code § 19.2-306.1(C) provides:

> *The court shall not impose a sentence of a term of active incarceration upon a first technical violation of the terms and conditions of a suspended sentence or probation*, and there shall be a presumption against imposing a sentence of a term of active incarceration for any second technical violation of the terms and conditions of a suspended sentence or probation. However, if the

- 17 -

court finds, by a preponderance of the evidence, that the defendant committed a second technical violation and he cannot be safely diverted from active incarceration through less restrictive means, the *court may impose not more than 14 days of active incarceration for a second technical violation*.

(Emphases added). Pursuant to Code § 19.2-306.1(A), "'technical violation' means a violation based on the probationer's failure" to comply with any of the ten probation requirements enumerated in Code § 19.2-306.1(A).

The plain, unambiguous language of Code §§ 19.2-306 and 19.2-306.1 evinces the General Assembly's intent to limit the authority of trial courts to impose active incarceration for violations of the terms and conditions of probation and suspended sentences. *See* Ronald J. Bacigal, *Virginia Practice: Criminal Procedure* § 19:9, at 704 (2021-2022 ed.) ("[I]n 2021, Virginia added § 19.2-306.1, which limits a trial court's revocation authority."). Effective July 1, 2021, a trial court "*shall not* impose a sentence of a term of active incarceration upon a first technical violation of the terms and conditions of a suspended sentence or probation." Code § 19.2-306.1(C) (emphasis added). If the probation violation is a first technical violation, then the trial court has no authority to impose any period of active incarceration except when necessary to facilitate the defendant's evaluation for or participation in a court-ordered drug, alcohol, or mental health treatment program.[6] If the probation violation is a second technical violation, then the trial court has no authority to impose a period of active incarceration greater than fourteen days. *See id.* ("[T]he court may impose not more than 14 days of active

---

[6] Pursuant to Code § 19.2-306.1(D),

> [t]he limitations on sentencing in this section shall not apply to the extent that an additional term of incarceration is necessary to allow a defendant to be evaluated for or to participate in a court-ordered drug, alcohol, or mental health treatment program. In such case, the court shall order the shortest term of incarceration possible to achieve the required evaluation or participation.

incarceration for a second technical violation.").  For a third or subsequent technical violation, "[t]he court may impose whatever sentence might have originally been imposed."  *Id.*  "Multiple technical violations arising from a single course of conduct or a single incident or *considered at the same revocation hearing* shall not be considered separate technical violations for the purposes of sentencing pursuant to this section."  Code § 19.2-306.1(A) (emphasis added).

Code § 19.2-306.1 creates a new statutory decision procedure that trial courts must follow upon finding a defendant in violation of the terms and conditions of his probation.  First, the trial court must determine whether any of the violations are non-technical violations, including new violations of law, good conduct violations, and violations of special conditions of a suspended sentence.  If any of the probation violations constitutes a new violation of law, a good conduct violation that resulted in a conviction, or a violation of a special condition of the defendant's suspended sentence that does not qualify as a technical violation under Code § 19.2-306.1(A), "then the court may revoke the suspension and impose or resuspend any or all of that period previously suspended."  Code § 19.2-306.1(B).

If none of the probation violations are non-technical violations, the trial court must next determine whether the defendant had any prior technical probation violations and, if so, how many.  If the defendant had two or more prior technical probation violations, then the current technical violation would be a third or subsequent technical violation for which "[t]he court may impose whatever sentence might have been originally imposed."  Code § 19.2-306.1(C).

If the defendant had only one prior technical violation, then the court must determine whether the prior technical violation or any of the current technical violations are violations based on clause (viii) or (x) of subsection A of Code § 19.2-306.1.  Clause (viii) is a violation based on the probationer's failure to "refrain from the use, ownership, possession, or transportation of a firearm" and clause (x) is a violation based on the failure to "maintain contact with the probation officer

- 19 -

whereby his whereabouts are no longer known to the probation officer." *See* Code § 19.2-306.1(A). A technical violation based on clause (viii) or (x) "shall be considered a second technical violation." Code § 19.2-306.1(C). Accordingly, if the defendant's prior technical violation or any of the current technical violations is a violation based on clause (viii) or (x) of Code § 19.2-306.1(A), then the current technical violation would be a third or subsequent technical violation for which "[t]he court may impose whatever sentence might have been originally imposed." Code § 19.2-306.1(C).

If the defendant had one prior technical probation violation and none of the defendant's technical violations is based on clause (viii) or (x) of Code § 19.2-306.1(A), then the defendant's current technical violation would be a second technical violation. Upon finding that the defendant's current technical violation is a second technical violation, the trial court must then determine whether a preponderance of the evidence establishes that the defendant "cannot be safely diverted from active incarceration through less restrictive means." Code § 19.2-306.1(C). If and only if the court so finds, "the court may impose not more than 14 days of active incarceration for a second technical violation." *Id.*

If the defendant had no prior technical violations and none of the defendant's current technical violations is based on clause (viii) or (x) of Code § 19.2-306.1(A), then the defendant's current technical violation is a first technical violation for which "[t]he court shall not impose a sentence of a term of active incarceration . . . ." *Id.*

If the trial court determines that a term of incarceration in excess of the limitations under Code § 19.2-306.1 "is necessary to allow a defendant to be evaluated for or to participate in a court-ordered drug, alcohol, or mental health treatment program," then "[t]he limitations on sentencing in [Code § 19.2-306.1] shall not apply." Code § 19.2-306.1(D). "In such case, the court shall order the shortest term of incarceration possible to achieve the required evaluation or participation." *Id.*

- 20 -

C. The Language of Code § 19.2-306.1 Evinces the Legislature's Retrospective Intent

The plain terms of Code § 19.2-306.1 that limit trial courts' sentencing authority upon "*a first technical violation of the terms and conditions of a suspended sentence or probation*" and for "*any second technical violation of the terms and conditions of a suspended sentence or probation*" show that the General Assembly intended the statutory sentencing limits to apply to all first and second technical probation violations, regardless of when the violation occurred or when it was charged. (Emphases added). The indefinite article "a" and the adjective "any" are unrestrictive modifiers in these statutory phrases. "The word 'any,' *like other unrestrictive modifiers such as 'an' and 'all,'* is generally considered to apply without limitation." *Sussex Cmty. Servs. Ass'n v. Va. Soc'y for Mentally Retarded Children, Inc.*, 251 Va. 240, 243 (1996) (emphasis added); *see also King v. Commonwealth*, 53 Va. App. 257, 263 (2009) ("The plain and unambiguous meaning of the word 'any' is 'one or more indiscriminately from all those of a kind.'" (quoting *Cox v. Cox*, 16 Va. App. 146, 148 (1993))). In the context of Code § 19.2-306.1, the unambiguous plain meaning of the phrases "a first technical violation," "any second technical violation," and "a suspended sentence" encompasses all such probation violations and all suspended sentences—whether or not they occurred or began before Code § 19.2-306.1 became effective on July 1, 2021. *See Allen v. Mottley Constr. Co.*, 160 Va. 875, 889-90 (1933); *see also Bd. of Sup'rs of James City Cnty. v. Windmill Meadows, LLC*, 287 Va. 170, 180 (2014) ("[T]his Court has never required that the General Assembly use any specific form of words to indicate that a new statute or amendment to an existing statute is intended to be applied retroactively." (quoting *Sussex Cmty. Servs.*, 251 Va. at 245)).

Our Supreme Court's analysis in *Allen* is "a 'decisive' example of a situation where retrospective intent is expressed in legislative language.'" *Wardell Orthopaedics*, 72 Va. App. at 305 (quoting *Sussex Cmty. Servs.*, 251 Va. at 243-44). In *Allen*, the Supreme Court construed a

- 21 -

statutory amendment that applied to "*an* award" as applying to awards made both before and after the amendment to the Workers' Compensation Act. The Supreme Court reasoned that to interpret the amendment that applied to "*an* award" as applying only prospectively to "*any* award *hereafter made*," "it would be necessary for us to supply words not found in the statute." *Allen*, 160 Va. at 889 (first emphasis added); *see also Sussex Cmty. Servs.*, 251 Va. 240 (holding that the statutory phrase "any covenant" encompassed all covenants without limitation, whether recorded before or after the date of statute's enactment). Here, applying the reasoning in *Allen*, I conclude that the General Assembly would have included additional limiting language if it had intended Code § 19.2-306.1 to apply (i) only to probation violations or suspended sentence violations occurring after the enactment of Code § 19.2-306.1 or (ii) only in cases with suspended sentences or probation beginning after the enactment of Code § 19.2-306.1.

In accordance with the legislative intent expressed in the language of Code §§ 19.2-306 and 19.2-306.1, I would hold that Code § 19.2-306.1 applies in all probation violation hearings, irrespective of the date on which the underlying offense was committed, or the date on which the defendant's probation or suspended sentence began, or the date on which process was issued or served with respect to the alleged probation violation.

At Green's July 13, 2021 revocation hearing, Code § 19.2-306.1 was in effect and the trial court was mandated to follow its sentencing procedure and to comply with its sentencing limitations. Notwithstanding this, the trial court ruled that Code § 19.2-306.1 did not apply in Green's revocation hearing. The trial court pronounced on the record that the disposition of Green's probation violation was governed by the general rule that statutes are prospective in the absence of express statutory language showing a contrary intent. The trial court erred in construing Code § 19.2-306.1. As explained above, the plain language of Code § 19.2-306.1 shows

that the General Assembly intended to require trial courts to follow the new statutory decision procedure and apply the statutory limits on active incarceration in all probation violation cases.

In failing to comply with Code § 19.2-306.1, the trial court cited this Court's decision in *Taylor v. Commonwealth*, 44 Va. App. 179 (2004). In *Taylor*, this Court construed the 2003 amendment to the sentencing provisions of Code § 18.2-308.4 and held that the defendant was properly sentenced under the version of the statute that was in effect when the defendant committed the offense.[7] 44 Va. App. at 189. Our analysis in *Taylor* was "guided by the fundamental principles of statutory construction that retroactive laws are not favored, and that a statute is always construed to operate prospectively *unless a contrary legislative intent is manifest*." *Id.* at 184 (emphasis added) (quoting *Berner v. Mills*, 265 Va. 408, 413 (2003)).

Here, unlike the statute at issue in *Taylor*, the language of Code § 19.2-306.1 manifests the legislative intent that trial courts follow a new statutory decision procedure in probation revocation hearings. Therefore, the trial court erred in failing to comply with Code § 19.2-306.1 in Green's July 13, 2021 revocation hearing when Code § 19.2-306.1 became effective on July 1, 2021, before Green's revocation hearing.

## II. THE TRIAL COURT MISINTERPRETED CODE § 1-239

The trial court erred in ruling that its decision was dictated by Code § 1-239, which the trial court construed as requiring it to apply the law in effect at the time the probation violation was instituted. Because Green's probation violation case was instituted prior to the effective date of Code § 19.2-306.1, the trial court concluded that Code § 19.2-306.1 did not apply in Green's revocation proceeding.

---

[7] Code § 18.2-308.4 prohibits possession of a firearm while in possession of certain controlled substances. "Under the 2003 version of the statute, a violation of subsection A no longer carried a mandatory minimum sentence, a violation of subsection B carried a mandatory minimum sentence of two years, and a violation of subsection C carried a mandatory minimum sentence of five years." *Taylor*, 44 Va. App. at 183.

Code § 1-239 provides:

> No new act of the General Assembly shall be construed to repeal a former law, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture, or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture, or punishment so incurred, or any right accrued, or claim arising before the new act of the General Assembly takes effect; *except that the proceedings thereafter held shall conform, so far as practicable, to the laws in force at the time of such proceedings*; and if any penalty, forfeiture, or punishment be mitigated by any provision of the new act of the General Assembly, such provision may, with the consent of the party affected, be applied to any judgment pronounced after the new act of the General Assembly takes effect.

(Emphasis added). This statute and its predecessor, Code § 1-16, have been applied in cases where the General Assembly amended the statutory punishment for a criminal offense after the defendant committed the offense.[8] In such cases, our appellate courts have held the statutory penalty at the time of the offense to be the applicable punishment.

In *Ruplenas v. Commonwealth*, 221 Va. 972, 975 (1981), our Supreme Court held that the reduced penalties for marijuana offenses under the 1979 enactment of Code § 18.2-248.1 did not apply to the sentencing of defendants who were tried and convicted of marijuana offenses before the effective date of Code § 18.2-248.1. Applying former Code § 1-16, the predecessor to Code § 1-239, the Virginia Supreme Court held that "the penalty in existence at the time of the offense should be applied unless the Commonwealth first elects to proceed under the new statute and obtains the consent of the defendant to do so." *Ruplenas*, 221 Va. at 978. Significantly, however, the Supreme Court clarified that "[o]f course, the legislature could have expressly addressed this situation in its enactment of Code § 18.2-248.1, but it did not do so. We are relying on the general rule of construction prescribed by Code § 1-16." *Id.*

---

[8] Code § 1-16 was repealed and replaced by Code § 1-239 in 2005. *See* 2005 Va. Acts c. 839.

- 24 -

The instant case is distinguished from *Ruplenas* because the express limitations on the court's sentencing authority and the unrestrictive plain terms of Code § 19.2-306.1 make it applicable to all probation violation cases, as explained above, whereas the terms of Code § 18.2-248.1 did not make its reduced penalties for marijuana offenses applicable to all sentencings for marijuana convictions regardless of the dates of offense and conviction. Significantly, Code §§ 19.2-306(C) and 19.2-306.1 expressly limit the sentencing authority of trial courts to impose a term of active incarceration in probation violation cases. Here, the trial court and the majority misinterpreted and misapplied Code § 1-239 when the plain language of Code § 19.2-306.1 is controlling. *See* Code § 1-202 ("The rules and definitions set forth in this chapter shall be used in the construction of this Code and the acts of the General Assembly, *unless the construction would be inconsistent with the manifest intention of the General Assembly*." (emphasis added)).[9]

The instant case is also distinguished from *Ruplenas* because the new statute at issue in *Ruplenas* constituted a penalty reduction for marijuana offenses, whereas Code § 19.2-306.1 is not a penalty reduction but is a modified decision procedure *that may or may not result in the imposition of a lesser sentence* than would have been imposed prior to the July 1, 2021 effective date of Code § 19.2-306.1. Code § 1-239 requires that when the General Assembly amends the Code, "the proceedings thereafter held shall conform, so far as practicable, to the laws in force at the time of such proceedings." Accordingly, the trial court should have followed the decision procedure set forth in Code § 19.2-306.1 at Green's revocation hearing.

---

[9] Code § 1-238 has no application here for the same reasons and because (i) the General Assembly amended the Code of Virginia by adding Code § 19.2-306.1, whereas Code § 1-238 applies to reenacted statutes and (ii) Code § 1-238 does not apply to changes in statutorily-prescribed procedures for sentencing proceedings, which "shall conform, so far as practicable, to the laws in force at the time of such proceedings." Code § 1-239.

III. GREEN'S SENTENCE FOR FELONY PROBATION VIOLATION

A. Sentencing and Revocation History

In August 2018, Green was convicted on the charge of felony assault on a law enforcement officer in violation of Code § 18.2-57. In December 2018, Green was sentenced to incarceration for a term of three years, with two years and six months suspended. Green's suspended sentence was conditioned on his compliance with the rules and requirements of supervised probation for a period not to exceed five years.

In November 2019, Green was found in violation of the terms and conditions of probation based on (i) a new conviction for petit larceny; (ii) using, possessing or distributing drugs or paraphernalia; (iii) failure to follows instructions and be truthful; and (iv) changing residence or leaving the State without permission. The trial court revoked the suspension of Green's sentence, re-imposed the sentence of incarceration for two years and six months, and suspended one year and six months of the sentence for a period of five years conditioned on Green's compliance with supervised probation.

B. Green's Second Technical Probation Violation

On April 6, 2021, the trial court ordered that a capias be issued for Green's arrest for failure to comply with the conditions of his suspended sentence. The alleged probation violations in the April 6, 2021 order included (i) failure to follow instructions and be truthful, cooperative, and report as instructed; and (ii) unlawful use, possession, or distribution of controlled substances or related paraphernalia. Each of these alleged violations of Green's felony probation was a "technical violation" as defined in Code § 19.2-306.1(A), and "[m]ultiple technical violations . . . considered at the same revocation hearing shall not be considered separate technical violations for the purposes of sentencing pursuant to [Code § 19.2-306.1]." Code § 19.2-306.1(A).

At the July 13, 2021 revocation hearing, the trial court had limited authority to sentence Green to a term of active incarceration for his second technical probation violation. Under the plain, unambiguous, express terms of Code § 19.2-306.1(C), "there shall be a presumption against imposing a sentence of a term of active incarceration for any second technical violation of the terms and conditions of a suspended sentence or probation." This statutory presumption against the imposition of active incarceration is not rebutted unless the preponderance of evidence proves that the defendant "cannot be safely diverted from active incarceration through less restrictive means . . . ." Code § 19.2-306.1(C). If the trial court finds that the presumption against active incarceration has been rebutted, then the trial court would have no authority to impose a sentence in excess of fourteen days of active incarceration. *See* Code § 19.2-306.1(C).

In violation of the sentencing limitations under Code § 19.2-306.1, the trial court erred by revoking and re-imposing the entirety of Green's suspended sentence for felony assault, sentencing Green to incarceration for one year and six months. Therefore, I would vacate the trial court's revocation order and remand with instructions to impose a sentence in compliance with Code § 19.2-306.1. *See Burrell v. Commonwealth*, 283 Va. 474, 480 (2012) ("Under Virginia law, a sentencing order is void ab initio if 'the character of the judgment was not such as the [C]ourt had the power to render.'" (alteration in original) (quoting *Rawls v. Commonwealth*, 278 Va. 213, 221 (2009))).

IV. Green's Sentence for Misdemeanor Probation Violation

By order entered in October 2019, Green was convicted on the misdemeanor charge of petit larceny in violation of Code § 18.2-96. The trial court sentenced Green to incarceration for a term of twelve months, with nine months suspended for a period of five years conditioned on (i) Green's compliance with local community-based probation for an indefinite period not to exceed five years and (ii) completion of substance abuse treatment.

On April 29, 2021, the trial court ordered that a capias be issued for Green's arrest for failure to comply with the conditions of his probation and suspended sentence. The alleged probation violations in the April 29, 2021 order included (i) failure to report as instructed; (ii) failure to follow instructions and be truthful and cooperative; (iii) unlawful use, possession, or distribution of controlled substances or related paraphernalia; and (iv) failure to comply with the special condition to complete substance abuse treatment.

On July 13, 2021, a combined revocation hearing was held on the alleged violations of Green's probation and suspended sentences for felony assault and petit larceny. With respect to Green's probation for petit larceny, the alleged violation of the special condition to complete substance abuse treatment is not a technical violation as defined in Code § 19.2-306.1(A). Pursuant to Code § 19.2-306.1(B),

> [i]f the court finds the basis of a violation of the terms and conditions of a suspended sentence or probation is that the defendant . . . has violated another condition other than (i) a technical violation or (ii) a good conduct violation that did not result in a criminal conviction, then the court may revoke the suspension and impose or resuspend any or all of that period previously suspended.

Absent such a finding, Green's violation of his probation for petit larceny would be a first technical violation for which the trial court lacked authority to impose a sentence of a term of active incarceration. *See* Code § 19.2-306.1(C).

Although the trial court revoked and re-imposed the entirety of Green's nine-month suspended sentence for petit larceny,[10] the record does not show that the trial court found Green in violation of the special condition to complete substance abuse treatment. Therefore, I would reverse

---

[10] The trial court ordered that the terms of active incarceration for Green's felony and misdemeanor probation violations "will run concurrently with each other."

the trial court's revocation order and remand with instructions to impose a sentence in compliance with Code § 19.2-306.1.

## V. Conclusion

The trial court erred in failing to follow the mandatory decision procedure set forth in Code § 19.2-306.1 and in sentencing Green to active incarceration in violation of the sentencing limits established in Code § 19.2-306.1. Therefore, I respectfully dissent from the majority's judgment affirming the trial court's revocation order.