PRESENT: Powell, Kelsey, McCullough, Chafin, Russell, and Mann, JJ., and Mims, S.J.

STANLEY EDWARD JOHNSON-BEY
F/K/A STANLEY EDWARD JOHNSON

                                  OPINION BY
v.  Record No. 230619               JUSTICE D. ARTHUR KELSEY
                                 NOVEMBER 27, 2024

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In 2003, Stanley Edward Johnson-Bey was convicted of a drug offense and given a suspended sentence. In 2022, following his fifth violation of the conditions of his probation and suspended sentence, the sentencing court imposed a portion of Johnson-Bey's then-remaining suspended sentence. Claiming that the court had erred in doing so, Johnson-Bey appealed. The Court of Appeals rejected Johnson-Bey's arguments, as do we.

I.

Johnson-Bey's original sentence in 2003 imposed a ten-year period of incarceration, the statutory maximum for the offense of which he was convicted. The entire term, however, was suspended subject to two conditions: Johnson-Bey must be on "good behavior for an indeterminate period" and must successfully submit to the "supervision of a Probation Officer for an indeterminate period." J.A. at 5. During the next seventeen years, Johnson-Bey repeatedly violated these conditions. The trial court revoked and resuspended portions of this sentence in 2005, 2008, 2017, 2019, and 2022.

The most recent revocation arose out of a criminal conviction in December 2021 for a crime committed in October 2020 and for Johnson-Bey's failure to meet with his probation officer in 2021. The circuit court conducted a revocation hearing in May 2022 and found that Johnson-Bey had again violated the good-behavior and probation conditions of his suspended sentence. At that hearing, Johnson-Bey did not contest the court's factual findings but instead

argued that an amendment to Code § 19.2-306(A), which became effective on July 1, 2021, stripped the circuit court of jurisdiction to enter a revocation order. In response, the Commonwealth contended that the statutory amendment had no retroactive effect on Johnson-Bey's 2003 conviction or the subsequent revocation orders entered against him. The circuit court agreed with the Commonwealth, and Johnson-Bey appealed to the Court of Appeals.

In an unpublished opinion, the Court of Appeals affirmed. The unanimous panel held that the 2021 statutory amendment operated prospectively, not retroactively, and thus did not apply to sentencing orders entered prior to July 2021. *See Johnson v. Commonwealth*, Record No. 0820-22-1, 2023 Va. App. LEXIS 516, at *7-9 (Aug. 1, 2023). The Court of Appeals added that "[e]ven assuming" the statutory amendments were procedural, not substantive, the amendments would only limit the sentencing court's authority to suspend his sentence at a revocation hearing after July 1, 2021, and would not affect the sentencing court's 2019 revocation order or the indefinite duration of the suspension. *Id.* at *9.

## II.

On further appeal to us, Johnson-Bey argues that the Court of Appeals erred by affirming the 2022 revocation order because the sentencing court had lacked the jurisdiction to enter the order. In response, the Commonwealth contends that our recent opinion in *Hannah v. Commonwealth*, 303 Va. 106 (2024), validates the decision of the Court of Appeals. For the following reasons, we believe that our precedent, both before and after *Hannah*, demonstrates that the Court of Appeals correctly decided the present case.

## A.

Code § 19.2-303 provides that circuit courts may "suspend imposition" of a criminal sentence "in whole or part" and "place the defendant on probation under such conditions as the

court shall determine." At the time of Johnson-Bey's 2003 conviction, Code § 19.2-303.1 authorized the circuit court to "fix the period of suspension for a reasonable time . . . without regard to the maximum period for which the defendant might have been sentenced." 1982 Acts ch. 636, at 1091. *But see* 2021 Acts ch. 538, at 1719 (Spec. Sess. I). The 2003 sentencing order in Johnson-Bey's case relied upon this provision when the circuit court ordered an indefinite suspension period conditioned on Johnson-Bey's good behavior and compliance with supervised probation. This statutory provision remained in place when the court entered revocation orders in 2005, 2008, 2017, and 2019.

In 2021, the General Assembly amended and reenacted Code §§ 19.2-303.1 and 19.2-306. *See Hannah*, 303 Va. at 117 (discussing 2021 Acts ch. 538, at 1719-20 (Spec. Sess. I) (effective July 1, 2021)). Code § 19.2-303.1 established a statutory maximum suspension period for suspended sentences: "In any case where a court suspends the imposition or execution of a sentence, it may fix the period of suspension for up to the statutory maximum period for which the defendant might originally have been sentenced to be imprisoned." When courts resuspend defendants' sentences, Code § 19.2-306(C) stated that they may do so "for a period up to the statutory maximum period for which the defendant might originally have been sentenced to be imprisoned, less any time already served, and may place the defendant upon terms and conditions or probation." The "period of any suspension," Code § 19.2-306(C) added, shall be measured "from the date of the entry of the original sentencing order."

B.

"[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). "It has long been the law of the Commonwealth that retroactive

3

application of statutes is disfavored and that 'statutes are to be construed to operate prospectively only unless a contrary intention is manifest and plain.'" *City of Charlottesville v. Payne*, 299 Va. 515, 528 (2021) (citation omitted). That said, the question whether "a statute operates 'retroactively' is not always a simple or mechanical task." *Landgraf*, 511 U.S. at 268.

The presumption against retroactivity has heightened weight when a statute is not merely amended — but amended and reenacted.

> "Reenacted," when used in the title or enactment of a bill or act of the General Assembly, means that the changes enacted to a section of the Code of Virginia or an act of the General Assembly are in addition to the existing substantive provisions in that section or act, and are effective prospectively *unless the bill expressly provides that such changes are effective retroactively on a specified date*.

Code § 1-238 (emphasis added). Code § 1-238 and its predecessors are "declaratory of existing public policy and law." *Berner v. Mills*, 265 Va. 408, 413 (2003) (quoting former Code § 1-13.39:3, now codified as Code § 1-238). A reenacted statute "will be applied retroactively only if the bill or act of assembly containing the legislation *explicitly* and *unequivocally* meets the requirements" of Code § 1-238. *Id.* (emphases added) (applying the predecessor statute to Code § 1-238).

No explicit or unequivocal language in the 2021 amendments states that they retroactively modify or annul provisions in prior criminal sentencing orders. *See Hannah*, 303 Va. at 122-24, 124 n.7. This conclusion leaves undisturbed the traditional view that "[f]or criminal sentencing, courts should apply the penalty in existence at the time of the commission of the underlying offense." *Id.* at 122. Johnson-Bey's 2003 conviction order and all subsequent revocation orders in 2005, 2008, 2017, 2019, and 2022[1] involve criminal offenses or suspended-

---

[1] The 2022 revocation order found that Johnson-Bey had violated the conditions of his suspended sentence based in part upon a crime he committed in October 2020 — before the 2021

4

sentence violations committed prior to the effective date of the 2021 amendments to Code §§ 19.2-303.1 and 19.2-306(C). These statutory amendments did not limit the court's sentencing options at the May 2022 revocation hearing because they did not retroactively apply to the underlying crime or any of the violations of the suspended-sentence conditions.

C.

Johnson-Bey responds to this point by disclaiming any need to argue for a retroactive application of the 2021 amendments to secure his ultimate goal — a vacatur of the most recent revocation order. He contends that, even when viewed prospectively, the 2021 amendments withdrew the authority of the revocation court to review his case. And even if judicial review were possible, Johnson-Bey adds, the revocation court would be obligated to apply the new maximum suspension period because it implicates only procedural, not substantive, interests. We find both assertions unpersuasive.

1.

Generally speaking, prospective legislation does not affect preexisting substantive rights, liabilities, or interests.[2] *See Landgraf*, 511 U.S. at 268-69. Because it creates or forbids new

_____

amendments became effective. Because he was convicted of this crime after the July 2021 effective date, Johnson-Bey argues that this distinction matters. We disagree. As we observed in *Hannah*, the "Commonwealth could have sought a revocation and indefinite resuspension solely based upon" the fact of the offense itself and that "requires us to apply the law in effect at the time of the offense." *Hannah*, 303 Va. at 122; *cf. Ruplenas v. Commonwealth*, 221 Va. 972, 978 (1981). Johnson-Bey's conviction has never been challenged, much less overturned, and thus serves as dispositive proof that the offense occurred on the date alleged. *See Resio v. Commonwealth*, 29 Va. App. 616, 622 (1999). *See generally* 5 Ronald J. Bacigal & Corinna Barrett Lain, Virginia Practice Series: Criminal Procedure § 19:10, at 760-61 (2023-2024 ed.).

[2] We say "generally" because there are cases in which a purely prospective statute can cut off future enforcement of substantive preexisting rights, such as when the legislature acting within the constitutional limits of its police powers changes substantive law and affects prior vested contractual relationships that control future risks or rewards. *See Union Dry Goods Co. v. Georgia Pub. Serv. Corp.*, 248 U.S. 372, 375-77 (1919); *Louisville & Nashville R.R. v. Mottley*, 219 U.S. 467, 484-86 (1911); *Working Waterman's Ass'n v. Seafood Harvesters, Inc.*, 227 Va.

substantive rights from arising in the future, prospective legislation must be distinguished from retrospective legislation.[3] "The inquiry into whether a statute operates retroactively demands a common sense, functional judgment about 'whether the new provision attaches new legal consequences to *events completed before its enactment*.'" *Martin v. Hadix*, 527 U.S. 343, 357-58 (1999) (emphasis added) (citation omitted). Properly framed, the prospective-versus-retrospective question "comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Landgraf*, 511 U.S. at 270; *see, e.g.*, *Heublein, Inc. v. Department of Alcoholic Beverage Control*, 237 Va. 192, 197 (1989) (distinguishing between legislation that "affect[s] *future* performance and termination of contracts in existence when a legislative act became effective" and "a legislative effort to make statutes retroactive so as to affect pre-statutory performance or termination of such contracts" (emphasis in original)).

2.

Turning next to mere procedural statutes, they too may change existing law. The change, however, only affects the process and manner in which courts adjudicate preexisting rights, liabilities, and interests.[4] Consider, for example, a statutory change affecting the law of

---

101, 109-10, 112 (1984); *Commonwealth ex rel. Page Milling Co. v. Shenandoah River Light & Power Corp.*, 135 Va. 47, 55-56 (1923); *see also* W.M. Lile, Notes on Statutes 11 (1911) ("[O]ne has no vested right in a mere rule of law.").

[3] "The terms 'retroactive' and 'retrospective' are synonymous in judicial usage and have been used interchangeably." 2 Shambie Singer, Sutherland's Statutes and Statutory Construction § 41.1, at 317 (8th ed. 2022).

[4] It is sometimes said that retroactive legislation is permissible if the change in the law is purely procedural and affects only the judicial process rather than any underlying substantive interests. *See, e.g.*, *Haas v. Lee*, 263 Va. 273, 276 (2002) (collecting cases); *Sargent Elec. Co. v. Woodall*, 228 Va. 419, 424 (1984); *Duffy v. Hartsock*, 187 Va. 406, 417 (1948). We take this occasion to clarify that truly procedural changes do not rebut the presumption against retroactive legislation because there is nothing to rebut. *See* 2 Singer, *supra* note 3, § 41:3, at 374 (noting that procedural statutes "are not 'retroactive' in the first place"). "A statute does not operate

6

evidence.  The change might open or close the admissibility gate at trial and, by doing so, favor one litigant over another.  But the preexisting substantive rights, liabilities, or interests of the litigants are not expanded or contracted by the procedural change.  *See Haas v. Lee*, 263 Va. 273, 276 (2002) (defining a "statute dealing solely with matters of . . . procedure" as "one not affecting vested interests and contractual rights" (citation omitted)); *Forbes v. Kenley*, 227 Va. 55, 59 (1984) (recognizing that procedural statutes do not "affect vested rights"); *Duffy v. Hartsock*, 187 Va. 406, 417 (1948) (stating that remedial or procedural statutes do not "create new rights nor take away vested ones" (citation omitted)).  Instead, preexisting rights, liabilities, or interests are intrinsically as strong or weak after the change in the procedural law as they were before it.

3.

Johnson-Bey contends that the 2021 statutory amendments, when characterized as merely prospective in nature, effectively "withdrew the trial court's jurisdiction" to enforce prior sentencing orders even though they fully complied with extant law when they were issued.  Appellant's Br. at 5-8; *see also id.* at 12-13, 16-17; Appellant's Reply Br. at 1-2; Oral Argument Audio at 1:30 to 1:40, 10:41 to 10:53.  This conclusion follows, he argues, from the 2021 enactment of a maximum "period of review of a suspended sentence."  *See* Appellant's Reply Br. at 4.  From our perspective, however, this assertion is little more than a retroactivity theory by another name.

---

'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law."  *Landgraf*, 511 U.S. at 269.  Truly procedural changes in the law always act prospectively by applying the procedural law in effect at the time of the legal proceedings.  *See Washington v. Commonwealth*, 216 Va. 185, 193 (1975); *see also* Code § 1-239 (codifying the principle that judicial proceedings "shall conform, so far as practicable, to the laws in force at the time of such proceedings").

In this case, the underlying "events" to which "new legal consequences" are being allegedly attached, *Landgraf*, 511 U.S. at 269-70, are judicial decrees issued by sentencing courts in criminal cases. Applying the 2021 amendments to the duration of Johnson-Bey's 2003 suspended sentence would do more than change the procedure of conducting revocation hearings. It would excise from the 2003 sentencing order the requirements that Johnson-Bey be on "good behavior for an indeterminate period" and must successfully submit to the "supervision of a Probation Officer for an indeterminate period." J.A. at 5. Whatever balance the sentencing court was hoping to achieve in its 2003 sentencing order would be wholly undone. In the language of retroactivity, the original sentencing order was "a relevant past event" subject to the "operation of the new rule" effecting a consequential "change in the law." *Landgraf*, 511 U.S. at 270. From a "common sense, functional" point of view, *Martin*, 527 U.S. at 357, Johnson-Bey seeks a retroactive application of new legislation to prior sentencing orders.

We likewise see no merit in the assertion that the statutory prohibition of indefinite suspensions can be deemed procedural rather than substantive. A criminal sentence must carefully balance each of the sometimes-competing goals of punishment: "retribution, deterrence, rehabilitation, and incapacitation," 1 Jens David Ohlin, Wharton's Criminal Law § 1:1, at 2-3 (16th ed. 2021) (footnotes omitted). In this balance, an abbreviated term of active incarceration often depends on the duration and efficacy of a suspended sentence. In this way, the suspension of a criminal sentence is an "act of grace," a discretionary power exercised for the "remedial purpose" of encouraging the rehabilitation of criminals. *Hannah*, 303 Va. at 119.

The duration of a suspension period is an integral part of the sentencing calculus. Sentencing judges prior to the 2021 amendments could use an indefinite term of suspension as both a carrot and a stick. If a probationer kept out of trouble for a reasonable period of time, he

8

could ask the judge to release him from supervised probation — knowing all along, however, that if he got into serious trouble, he could be ordered to serve all or part of the active sentence previously held in suspension. After the 2021 amendments became effective, indefinite periods of suspension cannot be used in original sentencing orders.[5] This change in the law affects the discretionary authority of sentencing judges and implicates the potential liberty interests of probationers. The nature of this change is best understood as substantive rather than procedural.

III.

In sum, the Court of Appeals correctly rejected Johnson-Bey's challenge to the entry and enforcement of his 2022 revocation order. He cannot rebut the presumption against retroactive application of the 2021 amendments. Nor can the relief he seeks be justified by construing these amendments as having a prospective application only or as affecting only procedural matters.

*Affirmed.*

---

[5] It is unnecessary in this case, as it was in *Hannah*, to decide the question whether a revocation order entered after the effective date of the 2021 statutory amendments can carry forward an indeterminate period of suspension decreed in previous sentencing orders. That precise issue remains to be resolved in future cases.